## 2000 ME 82

## HOME BUILDERS ASSOCIATION OF MAINE, INC., et al.

### v.

## TOWN OF ELIOT.

Supreme Judicial Court of Maine.

Argued Oct. 6, 1999.
Decided May 10, 2000.

---

John C. Bannon, (orally), Murray Plumb & Murray, Portland, for plaintiffs.

Christopher L. Vaniotis, (orally), Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Home Builders Association of Maine, Inc., E. Kenneth Zamarchi, and K/Z Enterprises, Inc. (collectively Home Builders) appeal from a grant of a summary judgment in the Superior Court (York County, *Brennan, J.*) in favor of the Town of Eliot in a suit challenging the Town's Growth Management Ordinance. Home Builders contends that the court erred when it concluded that the provision of the ordinance that limits permits was not a moratorium within the meaning of 30–A M.R.S.A. § 4301(11) (1996) [1] and, accordingly, did not violate 30–A M.R.S.A. § 4356 (1996).[2] We disagree and affirm the judgment.

[¶ 2] The Town of Eliot adopted a "Permit Limitation Ordinance" that, in part, was designed to limit development in the Town to accommodate its "fair share" of the population growth of the surrounding area. The ordinance was adopted in 1978, amended in 1987, and again amended in 1998 under the new title "Growth Management Ordinance." Among the stated purposes of the ordinance was to allow for development consistent with "orderly and gradual expansion of community services" and to encourage residential development in compatible locations. As part of its scheme, the Town required submission and approval of a growth permit application, without which the applicant could not obtain a building permit to begin residential construction. The ordinance placed a cap on growth permits, allowing forty-eight in a calendar year, essentially on a first-

---

1. Section 4301(11) defines "moratorium" as "a land use ordinance or other regulation approved by a municipal legislative body which temporarily defers development by withholding any authorization or approval necessary for development." 30–A M.R.S.A. § 4301(11) (1996).

2. Section 4356 governs when moratoria are lawful:

> Any moratorium adopted by a municipality on the processing or issuance of development permits or licenses must meet the following requirements.
> 1. Necessity. The moratorium must be needed:
> A. To prevent a shortage or an overburden of public facilities that would otherwise occur during the effective period of the moratorium or that is reasonably foreseeable as a result of any proposed or anticipated development; or
> B. Because the application of existing comprehensive plans, land use ordinances or regulations or other applicable laws, if any, is inadequate to prevent serious public harm from residential, commercial or industrial development in the affected geographic area.
> 2. Definite term. The moratorium must be of a definite term of not more than 180 days. The moratorium may be extended for additional 180–day periods if the municipality adopting the moratorium finds that:
> A. The problem giving rise to the need for the moratorium still exists; and
> B. Reasonable progress is being made to alleviate the problem giving rise to the need for the moratorium.
> 3. Extension by selectmen. In municipalities where the municipal legislative body is the town meeting, the selectmen may extend the moratorium in compliance with subsection 2 after notice and hearing.

30–A M.R.S.A. § 4356.

come, first-served basis.[3] In the twenty years since the original ordinance was passed, the permit cap has been reached only five times. Recent years have been at or close to the limit. The Town's estimated total population in 1997 was 5787.

[¶ 3] Zamarchi, the owner of K/Z Enterprises, Inc., a Maine corporation performing residential and commercial construction and remodeling, together with Home Builders, an organization of building contractors of which K/Z Enterprises is a member, filed a complaint seeking a declaratory judgment that the ordinance violated 30–A M.R.S.A. § 4356 and was unconstitutionally vague. They requested an injunction against enforcement of the ordinance.[4] The parties stipulated to a statement of material facts. Following the denial of Home Builders's motion for a summary judgment, summary judgment was entered in favor of the Town. This appeal followed.

[¶ 4] Because there is no dispute as to the facts, the only issue for us to address is the meaning of the statute. Statutory construction is a matter of law, and decisions regarding the meaning of a statute are reviewed de novo. *See Estate of Jacobs*, 1998 ME 233, ¶ 4, 719 A.2d 523, 524. When reviewing the construction of a statute, "[w]e look first to the plain meaning of the statutory language as a means of effecting the legislative intent." *Coker v. City of Lewiston*, 1998 ME 93, ¶ 7, 710 A.2d 909, 910. Only if the statutory language is ambiguous will "we examine other indicia of legislative intent, such as legislative history." *See id.*

[¶ 5] This appeal requires us to determine whether the provisions of the Town's Growth Management Ordinance, placing limits on growth and building permits, constitute a moratorium within the meaning of 30–A M.R.S.A. § 4301(11). Both parties agree that if the ordinance does constitute such a moratorium, the ordinance is invalid because provisions of 30–A M.R.S.A. § 4356 setting out criteria for moratoria have not been satisfied. We must answer two questions: (A) whether section 4301(11) can apply to the Town's ordinance even though the ordinance is permanent, in other words, whether the language of section 4301(11) is directed only at "temporary" ordinances; and (B) whether the Town's ordinance, which places limits on but does not prevent *all* development, is a "moratorium" within the meaning of 4301(11). We conclude that, although the application of section 4301(11) is not limited to ordinances that are temporary in duration, the Growth Management Ordinance enacted by the Town in this case does not constitute a moratorium within the meaning of that statute.

## I. TEMPORARY ORDINANCES

[¶ 6] Home Builders contends that, although the Town's Growth Management

---

3. This reflects a recent change in the ordinance. The 1978 ordinance, as revised in 1987, set up a point system by which applications were rated for suitability, and allowed four permits a month, with a "carry-over" to the next month, but not to the next year. The available *permits* were *split* evenly among proposed developments within a subdivision and proposed developments not within a subdivision. In addition, in months where there were fewer than two "subdivision" permit applications, for example, the Town's Code Enforcement Officer (CEO) was authorized to allow additional "non-subdivision" permits so long as no more than four permits total, plus "carry-overs," were issued in a given month. Under the 1998 "Growth Management Ordinance," the point system and the four-per-

month scheme was abolished in favor of a yearly, first-come, first-served system. "Subdivision" and "non-subdivision" permits were still split (i.e., 24 of each were allowed), but the CEO is authorized, under certain circumstances, to issue permits in excess of 24 so long as the total in a given year does not exceed 48. These additional permits can only be issued during roughly the last two weeks of December. Both the original and current ordinances allow for periodic review of the number of allowed permits.

4. Four other counts included in the original complaint were dismissed pursuant to a stipulated order.

Ordinance is permanent, section 4301(11) applies to it because the definition of moratorium in section 4301(11) is not limited to ordinances that are temporary. Rather, section 4301(11) defines a moratorium as "a land use ordinance or other regulation approved by a municipal legislative body which *temporarily* defers development by withholding any authorization or approval necessary for development." 30–A M.R.S.A. § 4301(11) (1996) (emphasis added). A comparable moratorium statute governing the Land Use Regulation Commission, on the other hand, defines "moratorium" as " a *temporary* land use regulation or ordinance approved by the commission or a municipal legislative body which prevents development or subdivision by withholding authorization or approval necessary for development." 12 M.R.S.A. § 682(8–A) (1994) (emphasis added). The Town contends that the word "temporary" in section 4301(11) is a "misplaced modifier," pointing out that the word "defers," directly following the word "temporary," itself means "to postpone temporarily." Thus, the Town argues, the word is superfluous unless it is understood to "describe the duration of the ordinance itself, not some possible impact of the ordinance."

[¶ 7] In *Struck v. Hackett,* 668 A.2d 411 (Me.1995), we noted that "it is well established that '[n]othing in a statute may be treated as surplusage if a reasonable construction supplying meaning and force is otherwise possible.'" *Id.* at 417 (quoting *Labbe v. Nissen Corp.,* 404 A.2d 564, 567 (Me.1979)), *quoted in Handyman Equip. Rental Co., Inc. v. City of Portland,* 1999 ME 20, ¶ 9, 724 A.2d 605, 607–08.

■ [¶ 8] Surplusage occurs when a construction of one provision of a statute renders another provision unnecessary or without meaning or force. *See, e.g., Opinion of the Justices,* 460 A.2d 1341, 1346 (Me.1982) (refusing to construe "An Act to Adjust Annually Individual Income Tax Laws to Eliminate Inflation-induced Increases in Individual Income Taxes" in such a way that section 5 of the Act would

be superfluous). Other cases involve situations in which a phrase in a statute, arguably with independent meaning in the context of its location in the statute, would be given no effect under a particular construction. *See, e.g., Handyman Equip. Rental,* 1999 ME 20, ¶ 8, 724 A.2d at 607 (discussing a party's construction of a statute that would render meaningless the phrase "liable to be taxed" in the context of a statute reading, in part, "property *liable to be taxed* in this State") (emphasis added); *National Newark & Essex Bank v. Hart,* 309 A.2d 512, 520 (Me.1973) (noting that one party's construction would render the entire last sentence of a statutory provision unnecessary).

[¶ 9] In cases in which a single word or punctuation has been the subject of an appeal, we have been reluctant to rearrange statutory language to give the statute a substantively different meaning than that which would be reasonably understood from the language as written. *See, e.g., Labbe,* 404 A.2d at 567–68 (offering an "edited" version of a statutory provision only as an illustration of the Court's construction of the statute based on a reasonable interpretation of the actual text). Instead, we have deferred to the plain meaning of the statute. *See, e.g., Struck,* 668 A.2d at 417 (finding the appellant's construction of 30–A M.R.S.A. §§ 381 and 501 would render the term "probationary" in section 381 superfluous).

■ [¶ 10] Here, the Town contends that we should construe section 4301(11) by changing the word "temporarily," currently placed immediately before and modifying the verb "defers," to "temporary," placing it before the noun phrase "land use ordinance." Although the Town notes correctly that the word "defer" already means "temporarily," what the Town suggests goes beyond a "reasonable construction." We are not persuaded that the word "temporarily" should be applied to modify a wholly separate term in the statute. The plain language of section 4301(11) includes within its definition of "moratorium" *any*

ordinance that temporarily defers development, whether the ordinance *itself* is a temporary or a permanent ordinance. Such a plain language reading is reasonable and leaves no words without meaning. Accordingly, section 4301(11) is not inapplicable merely because the ordinance in dispute is permanent.

## II. "MORATORIUM" UNDER SECTION 4301(11)

■ [¶ 11] Because, however, the Growth Management Ordinance does not prevent *all* development, but rather allows up to forty-eight new housing starts each year, we do not construe its provisions to amount to a "moratorium" within the meaning of section 4301(11). Home Builders relies on that language in section 4301(11), that defines moratorium as "a land use ordinance ... which temporarily defers any authorization or approval necessary for development" and contends that, because the ordinance requires applicants over a certain number to wait until the "following year at the soonest" before being issued a development permit, the ordinance temporarily defers development, and accordingly constitutes a moratorium under the statute.

■ [¶ 12] We read that phrase to address an ordinance that explicitly or effectively withholds *all* authorizations or approvals necessary for development, and not, as Home builders contends, to mean an ordinance that withholds *any single* authorization or approval. In section 4301(11), the Legislature intended to address those ordinances commonly understood to halt all development of a particular type. Such ordinances, regularly enacted by municipalities over the last decade, traditionally prohibit all development of the type at issue for a period of time and are intended to allow a municipality to catch its breath or develop regulations for the targeted development. *See* 30–A M.R.S.A. § 4356(1)(A), (B) (1996). In contrast to such an action, the Town of Eliot has not halted devel-

opment. Rather, it has allowed a significant but finite amount of development and has regulated the speed with which that development may occur in this town of 5787 people.

[¶ 13] Our interpretation of the moratorium provisions in this context turns on the meaning of "any" in the phrase "by withholding *any* authority or approval necessary for development." 30–A M.R.S.A. § 4301(11) (1996) (emphasis added). In common American usage, the word "any" is susceptible of several accepted meanings, each dependent on context. "Any" may mean "any one," but it may also mean "all" or "every." *See* THE OXFORD AMERICAN DESK DICTIONARY 24 (rev. ed.1998); WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY 40 (1970); WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY OF THE ENGLISH LANGUAGE 83 (1968). Because both of those meanings of "any" are acceptable uses, the meaning intended by the Legislature in this case can only be understood in the context of the legislation within which the word is used.

■ [¶ 14] The meaning of a statute "must be construed in light of the subject matter, purpose of the statute, and the consequences of a particular interpretation." *Church v. McKee*, 387 A.2d 754, 756 (Me.1978). An understanding of context must necessarily begin with the Legislature's stated goals and objectives regarding the statutory provision at issue. The restrictions on zoning moratoria are an integral part of the State's Planning and Land Use Regulation Act. *See* 30–A M.R.S.A. §§ 4301–4457 (1996 & Supp. 1999). Among the express purposes of the Act are the following:

A. Establish, in each municipality of the State, local comprehensive planning and land use management;

B. Encourage municipalities to identify the tools and resources to effectively plan for and manage future development within their jurisdictions with a maximum of local initiative and flexibility;

C. Encourage local land use ordinances, tools and policies based on local comprehensive plans.

30–A M.R.S.A. § 4312(2) (1996). The Legislature also announced that it is in the State's best interest to achieve the following goals:

A. To encourage orderly growth and development in appropriate areas of each community, while protecting the State's rural character, making efficient use of public services and preventing development sprawl;

B. To plan for, finance and develop an efficient system for public facilities and services to accommodate anticipated growth and economic development.

30–A M.R.S.A. § 4312(3) (1996).

[¶ 15] It is against the backdrop of those goals that we must determine what the Legislature intended when it addressed ordinances that "temporarily defer[ ] development by withholding *any* authorization or approval necessary for development." 30–A M.R.S.A. § 4301(11) (1996) (emphasis added). The Town's Growth Management Ordinance certainly does not defer development by withholding *all* authorizations. Indeed, it allows up to 48 new starts each year and requests for authorizations beyond that cap have had to be deferred only five times in 20 years. Indeed the ordinance would appear to be the very kind of municipal planning tool that the Legislature had in mind when it set forth its goals for the Planning and Land Use Regulation Act. It signifies the Town's attempt to "effectively plan for and manage future development," 30–A M.R.S.A. § 4312(2)(B) (1996), and satisfies the State's goal for allowing "orderly growth and development," 30–A M.R.S.A. § 4312(3)(A) (1996). The stated goal of allowing municipalities flexibility in establishing comprehensive plans is intended to encompass growth limitation ordinances of this sort.

[¶ 16] Nonetheless, Home Builders would have us interpret section 4301(11) to sweep into the limitations of the moratoria provision any ordinance that has as an effect the deferral of *any single* authorization, thus restricting municipalities from placing a cap on development of any kind unless that cap met the restriction of the moratoria provisions, most notably, a maximum effective duration of 180 days. *See* 30–A M.R.S.A. § 4356(2) (1996).[5] That construction would have an effect on communities across this State that currently use reasonable growth management ordinances to manage—but not to halt—development.

[¶ 17] While an unreasonable limit on development could, in certain circumstances, constitute a de facto moratorium, that is not the case here.[6] The cap has only been reached five times in 20 years. The Town has amended the ordinance twice, increasing the cap as the Town's growth permitted. The Town's actions have complied with the legislative mandate to "encourage *orderly* growth and development." 30–A M.R.S.A. § 4312(3)(A) (1996) (emphasis added). The Town's growth limit ordinance does not constitute a moratorium either as defined by the statute or de facto.

The entry is:

Judgment affirmed.

---

5. The 180 day limit may be extended only upon *certain findings by the municipality* and only after notice and hearing. *See* 30–A M.R .S.A. § 4356(2) (1996).

6. Home Builders does not allege that the permits have been granted in a discriminatory or unfair manner.