2006 ME 33

**LINNEHAN LEASING et al.**

v.

**STATE TAX ASSESSOR et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 16, 2005.
Decided: March 31, 2006.

Ralph I. Lancaster, Esq., James G. Good, Esq., Jonathan A. Block, Esq. (orally), Pierce Atwood, Portland, for plaintiffs.

G. Steven Rowe, Attorney General, Thomas A. Knowlton Asst. Atty. Gen. (orally), Augusta, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

Dissenting: SILVER, J.

ALEXANDER, J.

[¶ 1] This matter is before us on consolidated appeals from judgments by the Superior Court in Hancock and Kennebec Counties. Each case involves application of the bad debt sales tax credit, 36 M.R.S. § 1811–A (2005), to the transactional arrangements between Linnehan Leasing d/b/a Credit Now Auto Company (Linnehan) and its affiliated finance company, Atlantic Acceptance Co. (Atlantic). In Han–05–162, Linnehan and Atlantic appeal the Superior Court's (Hancock County, *Mead, J.*) dismissal of their claim for a declaratory judgment regarding proposed transactions between Linnehan and Atlantic. In Ken–05–183, the State Tax Assessor appeals the Superior Court's (Kennebec County, *Studstrup, J.*) judgment overturning a ruling of the Maine Revenue Services and holding that Linnehan was entitled to a bad debt sales tax credit for defaults in consumer credit contracts with Atlantic. We affirm the Hancock County judgment, and we vacate the Kennebec County judgment.

## I. CASE HISTORY

### A. The Applicable Statutes

[¶ 2] Eligibility for the bad debt sales tax credit is governed by 36 M.R.S. § 1811–A that states:

> The tax paid on sales represented by accounts charged off as worthless may be credited against the tax due on a subsequent report filed within 3 years of the charge-off, but, if any such accounts are thereafter collected by the retailer, a tax shall be paid upon the amounts so collected.

[¶ 3] Pursuant to section 1811–A, a "retailer" can qualify for the credit if it: (1) pays the sales tax upon the sale; (2) later charges-off the buyer's account as worthless on its books; and (3) applies for the credit within three years of the account being charged-off. *DaimlerChrysler Servs. N. Am., LLC v. State Tax Assessor*, 2003 ME 27, ¶ 12, 817 A.2d 862, 865. "Retailer" is defined by 36 M.R.S. § 1752(10) (2005) as a "person who makes retail sales or who is required to register by section 1754–A or 1754–B." [1] "Person," for purposes of this appeal, was defined as:

> [A]ny individual, firm, copartnership, association, society, club, corporation,

---

1. Title 36 M.R.S. § 1754–B (2005) requires "every seller of tangible personal property . . . that maintains in this State any office" to register. Linnehan falls under this section because it is headquartered in Trenton and sells motor vehicles. *See* 36 M.R.S. § 1752(17) (2005).

estate, trust, business trust, receiver, assignee or any other group or combination acting as a unit, and the plural as well as the singular number . . . .

36 M.R.S.A. § 1752(9) (1990).[2]

B. Factual History

[¶ 4] There is no significant dispute about the facts. Linnehan, an automobile dealer with several used car sales offices in Maine, is a registered Maine retailer, pursuant to 36 M.R.S. § 1754–B (2005).

[¶ 5] Atlantic is a finance company that works exclusively with Linnehan. Atlantic is not a registered retailer. The two companies together constitute a "buy here, pay here" operation. Each company is separately incorporated and files separate income tax returns.

[¶ 6] The Linnehan and Atlantic corporations are owned and controlled by the Linnehan family. Some business associates own minority interests in each corporation. Linnehan and Atlantic share office space, a management team, telephone system, parking lot, computer system, web site, payroll service, and insurance coverage.

[¶ 7] When a customer buys a car from Linnehan and seeks financing, he or she is first approved by Atlantic. After the customer's credit is accepted, the customer signs a retail sale finance agreement with Linnehan, which states that he or she will pay the purchase price of the vehicle, applicable fees, interest, and sales tax to Linnehan. That agreement is immediately assigned to Atlantic. In exchange for the assignment, Atlantic pays Linnehan a price that is discounted to reflect immediate payment and acceptance of the risk of default. As a result of the assignment, the customer is obligated to pay Atlantic, rather than Linnehan.

[¶ 8] At the end of each month, Linnehan pays sales tax to the State on the total purchase price of all vehicles sold during that month.

[¶ 9] Approximately twelve percent of Atlantic's loans go into default. After attempting to collect the outstanding loan balance, Atlantic charges-off the account as worthless on its books and deducts the charged-off amount from its income for tax purposes. Atlantic then repossesses the car, and Linnehan sells the car at auction, usually, the record indicates, for ten to twenty percent of the customer's purchase price of the vehicle. The auction sale price of the vehicle is credited to the defaulted customer's account. Linnehan then determines what percentage of the total sales tax remains outstanding on the customer's account and credits that figure against its subsequent sales tax liability.

[¶ 10] Prior to this controversy, Linnehan had taken the bad debt credit for fourteen years. In 2002, Linnehan was audited. Maine Revenue Services determined that Linnehan did not qualify for the bad debt credit because it suffered no loss from charged-off accounts. Accordingly, Linnehan was assessed back taxes, penalties, and interest for the period from May 1, 1999, to December 31, 2001. The assessment required Linnehan to pay $334,134.51 in sales tax, $3825.76 in use tax, $70,249.30 in interest, and $84,490.14 as a penalty for negligence.

[¶ 11] Linnehan filed for reconsideration pursuant to 36 M.R.S. § 151 (2005), and the Assessor upheld the assessment. Linnehan then filed an appeal in the Superior Court in Kennebec County pursuant to M.R. Civ. P. 80C and 36 M.R.S. § 151. After a hearing on cross motions for sum-

**2.** Title 36 M.R.S.A. § 1752(9) (1990) was repealed by P.L.2003, ch. 390, § 6 (effective Sept. 13, 2003). Title 36 M.R.S. § 111(3) (2005), with similar wording, now defines the term "person" in the sales and use tax law, and other portions of the tax code.

mary judgment, the court vacated the assessment, holding that Linnehan and Atlantic were so intertwined that they could be considered one "person" and thus a "retailer" in order to qualify for the section 1811–A tax credit. The State Tax Assessor appeals that Kennebec County decision.

[¶ 12] While the Rule 80C action was pending, Linnehan learned that the State Tax Assessor had issued an advisory opinion to the Lee Auto Group, stating that a planned course of transactions between Lee and a related finance company would make Lee eligible for the bad debt tax credit. Lee, like Linnehan, worked with a closely affiliated finance company to which it assigned finance agreements. Lee proposed that before an account was charged-off on the finance company's books, but after it was determined that there were problems with payments on the account, Lee would repurchase the finance agreement from the finance company and attempt to collect the debt from the customer. If Lee was unsuccessful, Lee would charge-off the account on its books. The Assessor determined that the proposal would make Lee eligible for the bad debt tax credit pursuant to 36 M.R.S. § 1811–A.

[¶ 13] Linnehan asked the Assessor whether, after Atlantic had identified a bad debt and charged-off the account, Linnehan would be eligible for the bad debt tax credit if it purchased the already charged-off accounts from Atlantic, renewed collection attempts, and then charged-off the accounts again, this time on Linnehan's books. The Assessor advised Linnehan that it would not be eligible for the credit under those circumstances.

[¶ 14] After the Assessor advised Linnehan that its proposal would not make it eligible for the credit, Linnehan filed a motion to amend its complaint in the Ken-

nebec County case to include a petition for a declaratory judgment and an equal protection claim based on alleged disparate treatment compared with the treatment given to Lee. Linnehan's motion to amend was denied as untimely. Linnehan then brought a declaratory judgment action separately in Hancock County. Linnehan's complaint asked the Court to (1) declare that the Lee advisory opinion was a correct interpretation of the law and that Linnehan was entitled to the same sales tax treatment; or (2) order the State Tax Assessor to issue substantially the same advisory ruling to Linnehan.

[¶ 15] The Hancock County Superior Court granted the Assessor's motion to dismiss on the grounds that Linnehan's petition for declaratory judgment failed to state a claim upon which relief may be granted due to lack of a justiciable controversy. The court also dismissed without comment Linnehan's claim that the Assessor had violated its rights to equal protection. Linnehan appealed the Hancock County decision.

## II. LEGAL ANALYSIS

### A. Standard of Review: 36 M.R.S. § 151

[¶ 16] When the Superior Court acts in an intermediate appellate capacity, we ordinarily review final agency determinations directly. *Davric Me. Corp. v. Me. Harness Racing Comm'n*, 1999 ME 99, ¶ 7, 732 A.2d 289, 293. In tax cases, however, the Superior Court is instructed by 36 M.R.S. § 151 to "make its own determination as to all questions of fact or law, regardless of whether the questions of fact or law were raised during the reconsideration proceeding." Because the Superior Court is not acting in an appellate capacity, we review its determinations directly. *Apex Custom Lease Corp. v. State Tax Assessor*, 677 A.2d 530, 532 (Me.1996).

## B. Application of the Governing Statutes

[¶ 17] There is no dispute that Atlantic charged-off the bad debts on its books and then received the federal and state income tax benefits resulting from the charge-offs. Further, there is no dispute that Atlantic is not, and never has been, a registered retailer for sales tax purposes, pursuant to 36 M.R.S. § 1754–B. Linnehan asserts that for purposes of obtaining the bad debt sales tax credit, Linnehan and Atlantic should be considered as one entity, as the Superior Court in Kennebec County concluded, because of (1) the near identity of corporate ownership and management, and (2) the definition of "person" in the tax code.

[¶ 18] The tax code defines a "retailer" as a person who makes retail sales, 36 M.R.S. § 1752(10), but then defined a "person" to include "any individual ... corporation ... or any other group or combination acting as a unit, and the plural as well as the singular number ...." 36 M.R.S.A. § 1752(9) (1990), now similarly defined pursuant to 36 M.R.S. § 111(3).[3]

[¶ 19] The purpose of the bad debt sales tax credit pursuant to 36 M.R.S. § 1811–A is to "give a credit on a sales tax paid on a charge sale, the payment for which was not subsequently made." Tax Expenditure Review: Report of the Joint Standing Committee on Taxation 38 (Dec.1986). As a retailer, Linnehan pays the required sales tax on the purchase price of the vehicle. Linnehan also receives from Atlantic the full, although discounted, payment for the purchase price of the vehicle. Thus, Linnehan has no accounts receivable that may become uncollectible to generate a charge-off of a worthless account and a sales tax credit. Accordingly, Linnehan is not entitled to the bad debt tax credit unless it can benefit from Atlantic's charge-off of the bad debts.

[¶ 20] The separate corporations have a purpose to benefit Linnehan and Atlantic; otherwise the businesses would not have created two separate and distinct corporations within the same ownership and management structure. When independent corporations are created in order to achieve some benefits, they must accept any accompanying detriments. *Moline Props., Inc. v. Comm'r of Internal Revenue*, 319 U.S. 436, 439, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943); *see also Taylor v. Standard Gas & Elec. Co.*, 306 U.S. 307, 322, 59 S.Ct. 543, 83 L.Ed. 669 (1939). Here, Linnehan and Atlantic enjoy corporate benefits including limited liability, separate liability for their separate acts, and the capacity for Atlantic to receive the income tax benefits from the charge-offs for bad debts. The separation of the retail corporation and the finance corporation is a business choice the Linnehan family has made.

[¶ 21] The interpretation of the state tax code that corporations that choose to be separate corporations are separate persons is confirmed by application of our rule of construction that we will not treat any provision of a statute as surplusage when a reasonable construction of a statute can provide meaning to each provision. *Home Builders Assoc. of Me., Inc. v. Town of Eliot*, 2000 ME 82, ¶ 7, 750 A.2d 566, 570. "Surplusage occurs when a construction of one provision of a statute renders another provision unnecessary or

---

**3.** "Person" is defined by 36 M.R.S. § 111(3) as:

3. Person. "Person" means an individual, firm, partnership, association, society, club, corporation, financial institution, estate, trust, business trust, receiver, assignee or any other group or combination acting as a unit, the State or Federal Government or any political subdivision or agency of either government.

without meaning or force." *Id.* ¶ 8, 750 A.2d at 570.

[¶ 22] Linnehan's interpretation of the statutory definition of person ignores the word "other" and would read all the individually named entities out of section 1752(9) or section 111(3), leaving a definition of "person" that would read "any individual ... or any ... group or combination acting as a unit." Such an interpretation would be inconsistent with our rules of statutory construction. Those rules require that the word "corporation" within section 1752(9) or section 111(3) have a separate meaning. The reference in the law to "other" groups or combinations is a catch-all phrase, applying to any other possible organizational entities that may be identified; it is not a device to allow separate corporations to be treated as a single entity under the tax code when such single entity treatment suits their purpose.

[¶ 23] Accordingly, Linnehan's interpretation of section 1752(9) is not supported by either a commonsense reading of the tax code or our rule of statutory construction that where possible we avoid treatment of statutory terms as mere surplusage.

## C. Judicial Estoppel

[¶ 24] Linnehan asserts that the State should be judicially estopped from asserting that Linnehan and Atlantic are separate corporations because, in an earlier, unrelated unfair trade practices action, the State asserted that Linnehan and Atlantic were a single unit. In that action,

the State asserted that Linnehan and Atlantic were alter egos, working to defraud defaulting purchasers of cars by conducting resales of repossessed vehicles in a manner that deprived the owners of the repossessed vehicles of the opportunity to receive the full retail value for their vehicle to be credited against the sums due on their loan.

[¶ 25] To judicially estop an entity from asserting a position in a subsequent legal action (1) the position asserted in the subsequent legal action must be clearly inconsistent with a previous position asserted; (2) the party in the previous action must have successfully convinced the court to accept the inconsistent position; and (3) the party must gain an unfair advantage as a result of their change of position in the subsequent action. *See State of N.H. v. State of Me.*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

[¶ 26] Assuming, without deciding, that the doctrine of judicial estoppel could be asserted against the State Tax Assessor in some circumstances,[4] it cannot apply to the facts of this case. The statute under which the State was proceeding in the previous action, the Unfair Trade Practices Act, 5 M.R.S. §§ 205–A to 214 (2005), is entirely different than the tax code. The prior action did relate to the repossession and resale of vehicles returned as a result of defaulted loans, but the action had nothing to do with the tax laws and did not require application or interpretation of sections 111(3), 1752(9), 1752(10), or 1811(A). In these circumstances, Linnehan's argument that the State Tax Assessor is judicially estopped from asserting

---

4. Although we have never considered whether the doctrine of judicial estoppel would apply against the State Tax Assessor, we have held that the related doctrine of equitable estoppel may not be invoked in a tax case. *See Fitzgerald v. City of Bangor*, 1999 ME 50, ¶ 15, 726 A.2d 1253, 1256 ("When the governmental function at issue is the discharge of responsibilities regarding taxation, we have consistently held that estoppel may never be invoked.").

that Linnehan and Atlantic are separate corporations fails.

### D. The Declaratory Judgment Action

[¶ 27] Linnehan asserts that, as a result of the State Tax Assessor's advisory opinion to Lee allowing Lee to take the bad debt tax credit, the Superior Court should have (1) determined that Linnehan should receive the same ruling, and (2) ordered the State Tax Assessor to retroactively allow Linnehan to take the bad debt tax credit based on the ruling issued to Lee.

[¶ 28] Linnehan had, and Lee proposed, financial arrangements whereby the dealer or retailer, after consummating the sale, would pay the sales tax and transfer the loan to the related finance company. Under the Lee proposal, when a problem was identified with payments on the loan, the paper would be transferred back from the finance company to Lee, before commencement of collection efforts. If Lee's collection efforts were not successful, the loan would then be charged-off on Lee's books. Lee, having charged-off the loan, could apply for the bad debt tax credit. The Lee proposal met all of the criteria for Lee to be a "retailer" qualifying for the bad debt tax credit that we established in *DaimlerChrysler*, 2003 ME 27, ¶ 12, 817 A.2d at 865.

[¶ 29] By contrast, under the Linnehan practice at issue in this case, and under the Linnehan proposal submitted to the State Tax Assessor, once problems with payments on a loan were identified, the finance company, not the dealer, would commence collection efforts. If those efforts were unsuccessful, the loan would be charged-off on the finance company's books. Only then, after the charge-off of the loan on the finance company's books, would the paper be transferred back to Linnehan and charged-off again to support Linnehan's attempts to claim the tax credit.

[¶ 30] An action filed pursuant to the Declaratory Judgment Act, 14 M.R.S. §§ 5951–5963 (2005), need not always be addressed on the merits. A trial court's refusal to address the merits and issue a declaratory judgment in a matter is reviewed for a reasonable exercise of the court's discretion. *Dodge v. Town of Norridgewock*, 577 A.2d 346, 347 (Me.1990); citing *E. Fine Paper v. Garriga Trading Co.*, 457 A.2d 1111, 1112–13 (Me.1983). Here the trial court dismissed the declaratory judgment action, determining that there was no justiciable case or controversy. The trial court's action was appropriate in the circumstances. Essentially, Linnehan was asking the court to compel the State Tax Assessor to apply to Linnehan an advisory ruling obtained by a third party on a different fact pattern. The court was in no position to enter an enforceable judgment in favor of Linnehan based on a prospective advisory ruling issued to a third party on a set of facts different from the facts before the court concerning the Linnehan–Atlantic relationship.

### III. CONCLUSION

[¶ 31] Based on the discussion above, the judgment in Han–05–162 is affirmed. The judgment in Ken–05–183 is vacated and remanded for entry of a judgment that Linnehan and Atlantic do not qualify for the bad debt sales tax credit pursuant to 36 M.R.S. § 1811–A. On remand, the Superior Court, with the changed result, will have to determine whether Linnehan should be required to pay the negligence penalty imposed by the State Tax Assessor. *See* 36 M.R.S. § 187–B(3–A) (2005).

The entry is:

Judgment in Han–05–162 affirmed. Judgment in Ken–05–183 vacated, remanded for further proceedings consistent with this opinion. No costs to either party.

SILVER, J., dissenting.

[¶ 32] I respectfully dissent from Part II, B of the Court's opinion and its holding in Ken–05–183. We have often said that our primary objective when interpreting a statute is to give effect to the Legislature's intent. *See, e.g., City of Bangor v. Penobscot County,* 2005 ME 35, ¶ 9, 868 A.2d 177, 180. To achieve that goal, we look first to the plain meaning of the language. *Id.* "We avoid statutory constructions that create absurd, illogical or inconsistent results." *Darling's v. Ford Motor Co.,* 1998 ME 232, ¶ 5, 719 A.2d 111, 114. Although I agree with the Court's conclusion that only the "retailer" who charged-off the account can benefit from the bad debt sales tax credit pursuant to 36 M.R.S. § 1811–A (2005), *see DaimlerChrysler Servs. N. Am., LLC v. State Tax Assessor,* 2003 ME 27, ¶ 12, 817 A.2d 862, 865, I cannot agree with the Court's determination of who qualifies as a "retailer" pursuant to 36 M.R.S. § 1752(10) (2005).

[¶ 33] "Retailer" is defined to mean "a person who makes retail sales or who is required to register by section 1754–A or 1754–B or who is registered under section 1756." *Id.* As the Court provides, "person," as defined for the purpose of this appeal, "includes any individual, firm, copartnership, association, society, club, corporation, estate, trust, business trust, receiver, assignee or any other group or combination acting as a unit, and the plural as well as the singular number." 36 M.R.S.A. § 1752(9) (1990).[5] There is no dispute that Linnehan is a retailer pursuant to section 1752(10). Furthermore, Linnehan and Atlantic, together, constitute a "retailer" when subsections 1752(9), (10) are given their plain and ordinary meaning. Accordingly, Linnehan is eligible for sales tax credit pursuant to section 1811–A.

[¶ 34] The undisputed facts demonstrate that Linnehan and Atlantic work together as a "buy here, pay here" operation. The two corporations share owners, officers, a management team, office space, telephones, computers, a website, and advertising. Atlantic works exclusively with Linnehan, and as a result, they share the same customers. Linnehan and Atlantic are entirely dependant upon each other for the sale and financing of used cars. As the Superior Court stated, the relationship is so close that "they could be considered the business equivalent [of] Siamese twins, joined at the hip." As two corporations working together to sell used cars, Linnehan and Atlantic are a "person" pursuant to section 1752(9) because they are a "combination acting as a unit."[6] Furthermore, they are a "person who makes retail sales" pursuant to section 1752(10).

[¶ 35] Moreover, the stated purpose of the bad debt sales tax credit lends support to this plain meaning analysis. That stat-

---

**5.** Section 1752(9) was repealed by P.L.2003, ch. 390, § 6 (effective Sept. 13, 2003). *See supra* n. 2.

**6.** Giving the statutory language its plain meaning does not treat any of the language as surplusage. Although the definition of "person" explicitly includes a corporation, that does not mean that "any other group or combination acting as a unit" cannot apply to multiple corporations. The Legislature's in-

clusion of a catch-all phrase demonstrates the intent to cast a broad net rather than somehow limit the possible combination of the listed entities. Reading the catch-all phrase to mean any combination, whether or not consisting of a listed entity, does not render any of the language without meaning or force. *See Home Builders Ass'n of Me., Inc. v. Town of Eliot,* 2000 ME 82, ¶ 8, 750 A.2d 566, 570.

ed purpose is to "give a credit on a sales tax paid on a charge sale, the payment for which was not subsequently made." Tax Expenditure Review: Report of the Joint Standing Committee on Taxation 38 (Dec. 1986). It is undisputed that Linnehan paid the required sales tax for which it later took credit. It is also undisputed that the retail customer did not pay the sales tax. By giving "person," and ultimately "retailer," an unnecessarily narrow interpretation, the Court is preventing Linnehan from taking a tax credit that the Legislature intended to provide. In effect, the Court is preventing anyone from benefiting from the credit and thus allowing the State to receive a windfall. This cramped construction of the statute creates an absurd and illogical result. The present case can be distinguished from *DaimlerChrysler*, both because of the intertwined relationship of Linnehan and Atlantic, and because Linnehan is the retailer who paid the sales tax in question.

[¶ 36] Finally, considerations of common fairness [7] and public policy warrant an interpretation that recognizes Linnehan and Atlantic as a "combination acting as a unit." As I have previously noted, the Court's interpretation prevents Linnehan or Atlantic from claiming the sales tax credit on tax that Linnehan indisputably paid. Moreover, the State has previously treated Linnehan and Atlantic as a unitary business.

[¶ 37] In 2002, the State filed an unfair trade practice complaint against Linnehan and Atlantic. The State alleged that Linnehan and Atlantic were perpetrating a "churning" scheme utilizing repossessed cars. In the complaint, the State alleged

that Linnehan and Atlantic "join together to sell and finance motor vehicles to consumer purchasers." The State further alleged that although Linnehan and Atlantic "are separate corporations they are part of a unitary business and are in fact *alter egos* .... [They] combine to form a used car dealership commonly known as a 'Buy–Here/Pay Here' sales operation." (Emphasis in original.) The complaint resulted in a consent decree, whereby Linnehan and Atlantic were enjoined from certain activities, required to forgive certain consumer debt, and required to pay $40,000 to the State. Significant to the present case is the fact that Linnehan and Atlantic were treated as a single entity for the purpose of imposing liability. The State not only recognized, but also, as a central aspect of their complaint, alleged that Linnehan and Atlantic *together* form a car dealership. The aforementioned notions of fairness and public policy concerns counsel a consistent approach to whether or not Linnehan and Atlantic operate their retail business as a single unit. If they are considered joined as a "dealership" for purposes of liability, then they should also be considered joined for purposes of the sales tax credit. The Court states there are different purposes for each act, and this is true. However, the fact remains that the two entities were treated as one.

[¶ 38] To further demonstrate the potential unfairness of the Court's interpretation, one can look to other contexts in which the intertwined nature of Linnehan and Atlantic would likely result in joint liability upon the finding of the requisite violation.[8] First, in the civil rights con-

---

7. In *Stevens v. Bouchard*, 532 A.2d 1028, 1030 (Me.1987), we explicitly stated that our refusal to impose an implied warranty of habitability upon the seller of an existing home was based, at least in part, on "considerations of fairness and common sense."

8. My intent is not to state conclusively that either Linnehan or Atlantic would be liable if the hypothetical violations existed, but simply to illustrate the potential for Linnehan and Atlantic to be treated as a single entity for

text, the term "employer" has been liberally construed and has been applied to integrated enterprises. *See, e.g., Trevino v. Celanese Corp.*, 701 F.2d 397, 403–04 (5th Cir.1983) (stating that separate entities may be sufficiently interrelated to constitute a single employer, and indentifying the "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control" as factors to be considered). Second, the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), *see* 42 U.S.C.S. §§ 9601–75 (1997 & Supp.2005), extends liability to "any person [9] owning or operating [a] facility" where a violation occurs, 42 U.S.C.S. § 9601(20)(A) (1997); *see also* 42 U.S.C.S. § 9607(a)(1) (1997). In *Lansford–Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1220 (3d Cir.1993), the court stated that a sister corporation that was deemed the operator of a facility could be liable under CERCLA

for the acts of its affiliate corporation. *See also Schiavone v. Pearce*, 79 F.3d 248, 254–55 (2d Cir.1996) (citing *Lansford–Coaldale* and reiterating the court's analysis). The trend in the law is to treat sister corporations as one for liability purposes.

[¶ 39] Applying the plain meaning of section 1752(9), (10), Linnehan and Atlantic, together, are a "retailer." Accordingly, Linnehan is eligible for sales tax credit pursuant to section 1811–A. Furthermore, as demonstrated by an examination of Legislative intent and notions of common fairness, denying the sales tax credit elevates form over substance. Therefore, I would affirm the judgment in Ken–05–183.

---

liability purposes despite the fact that they are technically distinct corporations.

**9.** The definition of "person" includes a corporation. 42 U.S.C.S. § 9601(21) (1997).