STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-AP-17-01

JAMES GOGGIN and ANN GOGGIN        )
                                   )
          Petitioners,             )
                                   )
v.                                 )          **ORDER ON APPEAL**
                                   )
STATE TAX ASSESSOR                 )
                                   )
          Respondent.              )

Pursuant to M.R. Civ. P. 80C, Petitioners James and Ann Goggin (collectively "Petitioners") have appealed a decision of the Maine Revenue Service upholding the denial of the Petitioners' request to amend their tax returns for the years 2012-2014. Respondent State Tax Assessor (the "Assessor") opposes the appeal. After initial briefing, the Court heard oral argument on the appeal on September 15, 2017. Mr. Goggin, an attorney in the Maine bar, appeared *pro se*, and Assistant Attorney General Thomas A. Knowlton appeared on behalf of the State. At that hearing, the Court took the appeal under advisement and invited the parties to provide additional briefing by September 22. Both parties did so and this matter is now fully briefed and ready for decision.

## PROCEDURAL HISTORY

Petitioners are individuals residing in Falmouth, Maine. Petitioners filed joint Maine state income tax returns for the years ending December 31, 2012 through December 31, 2014 (the "Contested Tax Years"). On January 9, 2016, Petitioners filed amended individual tax returns for the Contested Tax Years. The returns were amended to claim a credit for taxes paid to the State of

1

New Hampshire by GHK Company, LLC ("GHK"), an entity of which Ms. Goggin is a member. *See* 36 M.R.S.A. § 144. On May 9, 2016, the Assessor disallowed the credit. Petitioners filed a Petition for Reconsideration of the Assessor's disallowance. *See* 36 M.R.S.A. § 151(1). The Assessor upheld the denial of the credit for each of the Contested Tax Years in a decision dated September 21, 2016. Petitioners then timely appealed to this Court pursuant to M.R. Civ. P. 80C in a Petition for Review and De Novo Determination dated November 16, 2016. *See* 36 M.R.S.A. § 151(2)(F)(2); 5 M.R.S.A. § 11002.

## FACTUAL BACKGROUND

The parties agree on the relevant facts. *See generally* Joint Stipulation of Facts (hereafter "J.S.F. ¶ __."). Petitioners are spouses who have resided in Maine throughout the Contested Tax Years and up to the present. (J.S.F. ¶ 1.) GHK was formed as a limited liability company in the State of New Hampshire on March 8, 1994. (J.S.F. ¶ 2.) GHK's primary purpose has been to own, develop, maintain, and lease a commercial property in Salem, New Hampshire. (J.S.F. ¶¶ 2, 7.) For each of the Contested Tax Years, Ms. Goggin was allocated an interest in the profits of GHK, which were generated from rental income received from the Salem commercial property. (J.S.F. ¶¶ 4-8.)

New Hampshire imposes entity-level taxes on unincorporated companies, including LLCs. (J.S.F. ¶¶ 9-13.) The business profits tax ("BPT") is imposed "upon the taxable business profits of every business organization." (J.S.F. ¶ 9). *See* N.H. Rev. Stat. Ann. § 77-A:2. The business enterprise tax ("BET") is imposed upon the "taxable enterprise value tax base of every business enterprise." (J.S.F. ¶ 10.) *See* N.H. Rev. Stat. Ann. 77-E:2. GHK paid the BPT and the BET (collectively, the "Business Taxes") to New Hampshire each of the Contested Tax Years. (J.S.F. ¶¶ 9-13.) This was reflected in GHK's Return of Partnership Income filed with the federal

2

government each of the Contested Tax Years, in that GHK took a deduction for Business Taxes paid. (J.S.F. ¶¶ 14-16.)

Petitioners never claimed a credit on their individual income tax returns for any of the Contested Tax Years for Business Taxes paid by GHK. (J.S.F. ¶¶ 18-20.) In January 2016, Petitioners sought to amend their individual income tax returns, seeking a credit and refund for a pro rata share of the Business Taxes paid by GHK, commensurate to Ms. Goggin's individual income flowing to her through the entity. (J.S.F. ¶¶ 21-23). As explained in more detail above, the credit was disallowed by the Assessor. (J.S.F. ¶¶ 23-26).

## STANDARD OF REVIEW

A review of the Assessor's final agency action requires the Court to "conduct a de novo hearing and make a de novo determination of the merits of the case." 35 M.R.S.A. § 151(2)(G). The burden of proof is on the taxpayer. *Id.* In interpreting a statute, the Court must give effect to the intent of the Legislature by looking at the plain meaning of the statutory language. *DaimlerChrysler Servs. N.A., LLC v. State Tax Assessor*, 2003 ME 27, ¶ 7, 817 A.2d 862. When seeking an income tax credit, the taxpayer must show that the claimed credit is "unmistakably within the spirit and intent of the statute [providing for the credit]." *Id.* (citing *Foster v. State Tax Assessor*, 1998 ME 205, ¶ 7, 716 A.2d 1012).

Statutes enacted by the Legislature are presumed constitutional. *State v. Mosher*, 2012 ME 133, ¶ 10, 58 A.3d 1070 (citation omitted). The person challenging the statute has the burden of establishing its unconstitutionality, and must demonstrate convincingly that a statute conflicts with the constitution. *Id. See also Rideout v. Riendeau*, 2000 ME 198, ¶ 14, 761 A.2d 291. "All reasonable doubts must be resolved in favor of the constitutionality of the statute." *Mosher*, 2012 ME 133, ¶ 10, 58 A.3d 1070.

3

## DISCUSSION

In this appeal, Petitioners raise two issues. First, that as a matter of statutory interpretation, they are entitled to a credit offsetting the Business Taxes paid by GHK under 36 M.R.S.A. § 5217-A; second, that the disallowance of the credit for the Business Taxes is an unconstitutional violation of the Commerce Clause of the U.S. Constitution. *See* U.S. Const. art. I, § 8, cl. 3.

I.     PETITIONERS ARE NOT ENTITLED TO A CREDIT ON THEIR INDIVIDUAL INCOME TAX RETURN FOR BUSINESS TAXES PAID BY GHK UNDER 36 M.R.S.A. § 5217-A

Section 5217-A of Chapter 36 of the Maine Revised Statutes allows a "credit against the tax otherwise due . . . for the amount of income tax imposed on that individual for the taxable year by another state of the United States . . . with respect to income subject to tax . . . that is derived from sources in that taxing jurisdiction." 36 M.R.S.A. § 5217-A. Petitioners argue that it is contrary to the spirit and intent of a statute designed to prevent double taxation to permit two states to tax the same income simply because the state in which the income was derived happens to structure its tax system so that the tax is paid by a flow through entity (such as an LLC) rather than being paid by the members of the LLC as individuals. Petitioners concede that the BET is not an income tax and as such, as a matter of statutory interpretation, not entitled to a credit against their individual income tax liability under 36 M.R.S.A. § 5217-A.[1]

In 2008, the Law Court affirmed a Superior Court decision dealing with this same issue. *Day v. State Tax Assessor*, 2008 ME 39, 942 A.2d 685 (per curiam). An evenly divided Court affirmed the Superior Court's judgment in a one-paragraph *per curiam* decision. This Court is obliged to follow the Law Court's reported opinions. The Superior Court's reasoning below is of

---

[1] Petitioners nonetheless argue that Maine is constitutionally required to allow Petitioners a credit against their individual income taxes to offset their pro rata share of the BET paid by GHK, and that if the statute fails to allow such a credit then it is facially unconstitutional. This issue is addressed in Part II, *infra*, of this Order.

4

persuasive, but not binding authority. In *Day*, the Superior Court held that, based on the plain language of 36 M.R.S.A. § 5217-A, taxpayers were not entitled to a credit against their individual income tax obligation because the New Hampshire BPT was imposed on an LLC, not its individual members. *Day v. State Tax Assessor*, Nos. AP-04-58 & AP-04-59 (Consolidated), Me. Super. LEXIS 284 at *9, 13 (July 21, 2006). *See also Noyes v. Mahany*, Nos. AP-97-125 & AP-98-001 (Consolidated), Me. Super. LEXIS 300 at *4-5 (Dec. 17, 1998) (holding that under the plain language of section 5217-A income taxes paid to another state by a flow-through entity could not be claimed as a credit against shareholder's individual Maine income tax liability).

Petitioners counter that the Court should reject this precedent as an overly narrow, formalistic reading of 36 M.R.S.A. § 5217-A, and that allowing the credit will further the policy of avoiding double taxation of Maine entrepreneurs that underpins the statute. However, the Court cannot reach the policy argument where the language of the statute is clear. The Court reads the statute the same way as its sister courts as allowing a credit against "income tax imposed on that *individual*[,]" not taxes imposed on entities as was done by New Hampshire in this case. 36 M.R.S.A. § 5217-A (emphasis added). The Legislature knows how to craft tax credits so that they flow through to members of LLCs and other pass through entities and has done so for several other Maine income tax credits. *See, e.g.*, 36 M.R.S.A. §§ 5216-B(2), 5219-W(3), 5219-HH(5). The language of 36 M.R.S.A. § 5217-A makes it clear that the Legislature has not chosen to do so in that statute. Based on the plain language of the statute, the persuasive authority of Superior Courts that have dealt with this issue before, and the controlling authority of the Law Court, this Court rules that as a matter of statutory interpretation Petitioners are not entitled to a tax credit against their Maine individual income tax for Business Taxes paid by GHK in New Hampshire under 36 M.R.S.A. § 5217-A.

II.    DISALLOWANCE OF A TAX CREDIT AGAINST MAINE
       INDIVIDUAL INCOME TAX FOR BUSINESS TAXES PAID BY
       AN ENTITY IN NEW HAMPSHIRE DOES NOT VIOLATE
       THE COMMERCE CLAUSE OF THE U.S. CONSTITUTION

Petitioners do not rely exclusively on the statutory interpretation of 36 M.R.S.A. § 5217-A in this appeal. Petitioners further argue that if the statute does not allow a tax credit against their Maine individual income tax for Business Taxes paid by GHK in New Hampshire then the statute violates the Commerce Clause of the U.S. Constitution. *See* U.S. Const. art. I, § 8, cl. 3. This argument relies principally on the U.S. Supreme Court's recent decision in *Comptroller of the Treasury v. Wynne*, 575 U.S. __, 135 S. Ct. 1787 (2015).

The Court decided *Wynne* based on its prior decisions interpreting the Commerce Clause, which grants the U.S. Congress the power to "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. Although the Commerce Clause is framed as a positive grant of power, the U.S. Supreme Court has "consistently held this language to contain a further, negative command, known as the dormant Commerce Clause, prohibiting certain state taxation even when Congress has failed to legislate on the subject." *Wynne*, 135 S. Ct. at 1794 (citing *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179 (1995)). In particular, tax schemes that have "the potential to result in the discriminatory double taxation of income earned out of state and create[] a powerful incentive to engage in intrastate rather than interstate economic activity[]" may be unconstitutional. *Id.* at 1801-02. Such schemes can be cured, however, if they pass the internal consistency test. *Id.* at 1802. In applying this test, courts must "look[] to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate." *Id.* at 1803 (citing *Okla. Tax Comm'n*, 514 U.S. at 185). The Court goes on to describe the application of the test:

6

By hypothetically assuming that every State has the same tax structure, the internal consistency test allows courts to isolate the effect of a defendant State's tax scheme. This is a virtue of the test because it allows courts to distinguish between (1) tax schemes that inherently discriminate against interstate commerce without regard to the tax policies of other States, and (2) tax schemes that create disparate incentives to engage in interstate commerce (and sometimes result in double taxation) only as a result of the interaction of two different but nondiscriminatory and internally consistent schemes . . . . The first category of taxes is typically unconstitutional; the second is not.

*Id.* In *Wynne*, taxpayer Brian Wynne, a Maryland resident, owned stock in a S-corporation that earned income in states other than Maryland, and filed state income tax returns in 39 states. The Wynnes individually earned income passed through to them from the corporation. The Wynnes claimed an income tax credit for income taxes paid to other states, which, due to an unusual feature of Maryland's income tax credit statute, was allowed only in part. The U.S. Supreme Court held in favor of the Wynnes, ruling that Maryland's tax scheme violated the Commerce Clause.

Petitioners' principal argument is that *Wynne*'s holding is that a state tax scheme that (1) results in the double taxation of income earned out of state and (2) that discriminates in favor of intrastate over interstate economic activity is *per se* unconstitutional. *Wynne*'s holding, however, is narrower than that. The U.S. Supreme Court makes clear that neither of these conditions, whether together or in isolation, is sufficient for a State's tax scheme to be unconstitutional. *See Wynne*, 135 S. Ct. at 1803 n. 5 and accompanying text. It is only when these conditions are present and the scheme fails the internal consistency test that it is unconstitutional. When double taxation

7

or disincentives to engage in interstate commerce result from "the interaction of two different but nondiscriminatory and internally consistent schemes," the tax scheme is nonetheless constitutional. *Id.*

Petitioners suggest that Maine's system nonetheless fails the internal consistency test because a taxpayer who is a Maine resident and forms an LLC in Maine is not subject to tax at multiple levels while another Maine resident and taxpayer who forms an LLC in another jurisdiction that taxes at the entity level is subject to double taxation. This misstates the test as articulated in *Wynne*; to properly apply the test, the Court must consider the tax scheme at issue and see whether its identical application *by every State in the Union* would place interstate commerce at a disadvantage under intrastate commerce. *Wynne*, 135 S. Ct. at 1803. If every state taxed only individual income, and offered a tax credit to every taxpayer proportional to the tax on individual income paid to another state, there would be no burden on interstate commerce because the disincentive to engage in interstate commerce would be remedied. By offering a 100% credit against individual income taxes paid in other states in 36 M.R.S.A. § 5217-A, Maine passes the internal consistency test.

It is this aspect of Maine's tax code that distinguishes it from *Wynne*. Prior to the U.S. Supreme Court's holding in *Wynne*, Maryland *never* allowed a 100% credit for income tax paid to another state: if Maryland residents paid income tax to another jurisdiction for income earned there, Maryland allowed them a credit against only a *portion* of their income tax liability to Maryland. *Wynne*, 135 S. Ct. at 1792. Applying the internal consistency test to this scheme results in inevitable double taxation for those taxpayers who earn income in another state, even if every state in the country employed an identical system. *Id.* at 1803-04.

8

Here, to the extent that any double taxation or disincentive to engage in interstate commerce exists, it is the result of an unusual feature of New Hampshire's tax law: an entity level tax on LLCs. Thus, it is the interaction of two different but nondiscriminatory and internally consistent schemes[2] which have caused the result about which Petitioners complain; not an internally inconsistent, inherently discriminatory tax scheme like was in issue in *Wynne*.

Maine's tax scheme does not burden interstate commerce simply because it may discourage a Maine resident from forming an LLC in New Hampshire. Had GHK been formed in any other state in New England—or almost any other state in the Union other than New Hampshire—it would not have been taxed at the entity level. Maine's tax code cannot be made unconstitutional by another state's tax laws. *See Armco v. Hardesty*, 467 U.S. 638, 644-45 (1984). Ms. Goggin and her business partners opted to form an LLC to own and rent real estate in New Hampshire, a state that imposes entity level business taxes on LLCs. The tax consequences here are the result of Ms. Goggin's choice to form an LLC as the vehicle to own and rent real estate in New Hampshire. Petitioners must accept any accompanying tax detriments resulting from that choice. *See Linnehan Leasing v. State Tax Assessor*, 2006 ME 33, ¶ 20, 898 A.2d 408.

## CONCLUSION

Based on the foregoing, the Court hereby **AFFIRMS** the decision of the State Tax Assessor.

9/28/17
**DATE**

**SUPERIOR COURT JUSTICE**

---

[2] The Court assumes without analysis that New Hampshire's statutes authorizing the Business Taxes would pass the internal consistency test and are otherwise constitutional. Petitioners are not challenging New Hampshire's tax scheme in this suit, and the constitutionality of New Hampshire's law cannot affect the constitutionality of Maine's. *See Armco v. Hardesty*, 467 U.S. 638, 644-45 (1984).

Entered on the Docket: 9/28/17
Copies sent via Mail___ Electronically ✓

9