2007 ME 17

**Deborah J. BATCHELDER**

v.

**REALTY RESOURCES HOSPITALITY, LLC et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 13, 2006.

Decided: Jan. 30, 2007.

Arthur J. Greif (orally), Julie D. Farr, Gilbert & Greif, P.A., Bangor, for plaintiff.

James D. Poliquin (orally), Norman, Hanson & DeTroy, LLC, Portland, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] Seventeen Realty Resources Hospitality, LLC entities (collectively, Realty Resources) and Restaurant Employee Leasing Co., LLC (Relco) appeal from the judgment of the Superior Court (Penobscot County, *Hjelm, J.*) entered after a jury verdict and awarding compensatory damages to Deborah J. Batchelder on Batchelder's complaint for violation of the Maine Whistleblowers' Protection Act (WPA), 26 M.R.S. §§ 831–840 (2006), and the Maine Human Rights Act (MHRA), 5 M.R.S. §§ 4551–4634 (2006). Realty Resources and Relco contend that the court improperly applied the integrated enterprise theory to hold them liable to Batchelder for damages. Batchelder crossappeals from the same judgment, and contends that the court erred in applying a clear and convincing standard of proof to her statutory punitive damages claim. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Batchelder was terminated from her position as a waitress at Denny's restaurant in Bangor in December of 2001, after making several complaints to management about various company practices. In March of 2002, Batchelder filed a complaint against Relco with the Maine Human Rights Commission, from which she obtained a right-to-sue letter pursuant to 5 M.R.S. § 4612(6).[1] Batchelder later filed a complaint in the Superior Court against Realty Resources Hospitality, LLC, operating in seventeen locations throughout New England, fifteen of which were doing business as Denny's restaurant, as well as Relco, alleging that her employment at Denny's was terminated in violation of the WPA[2] and the MHRA. Batchelder alleged that all the named defendants (collectively, Denny's) constituted a single entity, and that, based on an integrated enterprise theory, that entity was her employer and it was therefore liable for her damages.

[¶ 3] A jury trial was held in December of 2005. Viewed in the light most favorable to Batchelder, as the prevailing party, *see Poland v. Webb*, 1998 ME 104, ¶ 10, 711 A.2d 1278, 1280, the following facts relevant to the integrated enterprise question of fact were established at trial. At the time of Batchelder's employment with Denny's, Joseph Cloutier owned one hundred percent of all eighteen defendant LLCs, and served as president of each. Fourteen of the defendants—all the Realty Resources Hospitalities entities—own and operate Denny's restaurants in various locations (the fifteenth Realty Resources closed). The remaining two Realty Resources are holding companies, Realty Resources, LLC, for the Denny's locations in

---

1. Title 5 M.R.S. § 4612(6) (2006) provides:

 If, within 180 days of a complaint being filed with the commission, the commission has not filed a civil action in the case or has not entered into a conciliation agreement in the case, the complainant may request a right-to-sue letter, and, if a letter is given, the commission shall end its investigation.

2. The WPA provides in pertinent part that "[n]o employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment" because the employee reports to the employer or any public body an employer's violation of any rules, laws, health and safety practices, or reasonable standards of care. 26 M.R.S. § 833(1) (2006). Because there is no challenge to the sufficiency of the evidence to support the jury's verdict that Batchelder proved her whistleblowers' claim, we do not detail all the facts pertinent to that claim.

Maine, and Realty Resources New England, LLC, for the Denny's locations in Massachusetts and New Hampshire. Except for the two holding companies, each Realty Resources owns its own land or leasehold interest, equipment, and franchise rights. Each Realty Resources also employs its own managers and assistant managers.

[¶ 4] The eighteenth defendant, Relco, is an employee leasing company that leases hourly employees to each Denny's location, including all the wait staff. Relco owns no restaurants and has no assets, and is instead an entity established to pay hourly wages in a centralized manner. Relco has no control over hiring and firing, budgets, or food safety. From 2001 to 2003, these fourteen Realty Resources restaurants filed only three aggregated tax returns.

[¶ 5] The jury returned a verdict in which it found in Batchelder's favor on her whistleblowers' claim, and that Denny's did constitute an integrated enterprise. It awarded Batchelder $50,000 in compensatory damages for which all eighteen defendants were jointly and severally liable. The jury, having been instructed that it could award punitive damages only if it found that Denny's acted with malice or reckless indifference by clear and convincing evidence, awarded no punitive damages to Batchelder. Denny's appealed and Batchelder cross-appealed.

## II. DISCUSSION

### A. Integrated Enterprise Theory

[¶ 6] Denny's contends that the court erred when it instructed the jury as to the integrated enterprise theory.[3] The court gave the following instruction to the jury regarding the theory:

> The plaintiff alleges that the defendants are an integrated enterprise, which means that they would be treated as a single employer. The plaintiff bears the burden of proving this allegation by a preponderance of the evidence. In determining whether the defendants are an integrated enterprise, you should consider the relationship among the defendants, including the extent to which there is, number one, the interrelation of operations, including such things as shared employees, services, records, office space and equipment, [commingled] finances, and common handling of tasks such as payroll, books, and tax returns. Number two, common management, such as where an individual or group of individuals controls all the businesses and serves as an officer or director for each of them. Number three, centralized control of labor relations such as where a single entity maintains personnel records for each of the companies, where the companies have a shared personnel department, or where the same persons make employment decisions for all entities, and the entities share a universal personnel handbook, and number four, common ownership. You should consider these factors in determining whether the plaintiff has proven that the defendants are an integrated enterprise. Of these factors, however, the most important consideration is whether the

3. Denny's also contends that Batchelder was precluded from recovering compensatory damages from the seventeen Realty Resources entities pursuant to 5 M.R.S. § 4622(1) (2006) because she failed to name them in her previous complaint before the Commission. Because Denny's failed to preserve this argument by bringing it to the attention of the trial court, see Fitch v. Doe, 2005 ME 39, ¶ 27, 869 A.2d 722, 729, and because the failure to seek a remedy before the Commission in these circumstances does not deprive the court of jurisdiction, we do not consider it. See 5 M.R.S. § 4622(1); Me. State Acad. of Hair Design, Inc. v. Commercial Union Ins. Co., 1997 ME 188, ¶ 18, 699 A.2d 1153, 1160.

businesses have centralized control of labor relations.

We review the trial court's jury instructions for prejudicial error to determine whether the court correctly and fairly informed the jury as to all necessary aspects of the applicable law. *Lee v. Scotia Prince Cruises Ltd.*, 2003 ME 78, ¶ 15, 828 A.2d 210, 214.

[¶ 7] The court's jury instruction on an integrated enterprise was based on the theory as set forth in *Romano v. U–Haul Int'l*, 233 F.3d 655 (1st Cir.2000). In *Romano*, the United States Court of Appeals for the First Circuit set out the four-factor integrated enterprise test, originally developed pursuant to the National Labor Relations Act, 29 U.S.C.S. § 164 (LexisNexis 1993 & Supp. 2006), and which is used to determine if "interrelated companies should be treated as one entity." *Romano*, 233 F.3d at 662. The test involves an analysis of four factors: "(1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership." *Id.* Among these factors, "control of employment decisions is a primary consideration in evaluating employer status," but "only to the extent that the parent exerts an amount of participation [that] is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions." *Id.* at 666 (quotation marks omitted) (alteration in original).

[¶ 8] The integrated enterprise theory has been adopted and/or applied by a number of other jurisdictions, including the majority of the federal circuits. *See, e.g., Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir.1999); *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993–94 (6th Cir.1997); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240–41 (2d Cir.1995); *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir.1987); *Childs v. Local 18, Int'l Bhd. of Elec. Workers*, 719 F.2d 1379, 1382 (9th Cir.1983); *Trevino v. Celanese Corp.*, 701 F.2d 397, 403–04 (5th Cir. 1983). It has never, however, been adopted as the law of Maine.

[¶ 9] Denny's does not dispute that Maine should adopt an integrated enterprise theory; rather, it challenges: (1) the application of the integrated enterprise theory to this case as a matter of law, (2) the four-factor test used by the court in applying the theory, and (3) the application of the theory to this case as a matter of fact. It also contends that the court's jury instruction is not harmless error because the excessive number of defendants held to be liable had an influence on the size of the jury's award of damages.

[¶ 10] Denny's, however, failed to make the argument before the trial court that it now makes on appeal, that the integrated enterprise theory should be used only as a jurisdictional test not applicable to these particular defendants. Denny's now contends that the test of the integrated enterprise theory should have been based on *Papa v. Katy Indus., Inc.*, 166 F.3d 937 (7th Cir.1999),[4] rather than on *Romano*. "The purpose of objections to instructions is to assist the trial court in developing the most accurate and concise statement of the law possible for instructing the jury ...." *Clewley v. Whitney*,

---

4. In *Papa*, the United States Court of Appeals for the Seventh Circuit rejected the four-factor integrated enterprise test, and adopted a more narrow version of the theory, concluding that corporations may be considered affiliated only in three circumstances: (1) when a parent corporation is liable for the employer entity's debts, (2) when a corporation splits into a number of smaller corporations for the purpose of avoiding liability, and (3) when the parent corporation directs the discriminatory acts of the subsidiary. *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 939–41 (7th Cir.1999).

2002 ME 61, ¶ 10, 794 A.2d 87, 90. Thus, "[i]n order to properly preserve a challenge to a jury instruction, a party must not only object but must state distinctly the ground for the objection." *Morey v. Stratton,* 2000 ME 147, ¶ 9, 756 A.2d 496, 499 (quotation marks omitted). Further, "[a] failure to direct the court's attention to the challenged language of a jury instruction or to offer a more acceptable version may render the objection inadequate to preserve the issue for appeal." *Id.* (quotation marks omitted).

[¶ 11] Because Denny's' arguments are not preserved, we review the integrated enterprise instruction only for obvious error. *See Estate of Bragdon,* 2005 ME 85, ¶ 4, 875 A.2d 697, 699; *Morey,* 2000 ME 147, ¶ 10, 756 A.2d at 499. We do not now decide whether to adopt the integrated enterprise theory in Maine, nor do we decide what formulation of the theory is preferable. We conclude only that, given the obvious error standard of review we must apply, we cannot say that the court's instruction on an integrated enterprise theory, adopted by numerous jurisdictions and used in matters similar to the present case, amounts to obvious error.[5] Accordingly, we do not disturb the court's judgment awarding compensatory damages.

B. Punitive Damages

■ [¶ 12] In her cross-appeal, Batchelder contends that the court erred when it instructed the jury that the standard of proof for Batchelder's punitive damages claim was clear and convincing evidence, an instruction to which Batchelder objected. She contends that the standard of proof for her punitive damages claim, brought pursuant to the MHRA, should instead be preponderance of the evidence.

■ [¶ 13] The standard of proof for punitive damages claims has long been settled law in Maine. In 1985, we decided *Tuttle v. Raymond,* 494 A.2d 1353 (Me. 1985), the now-seminal Maine case on punitive damages. In *Tuttle,* we held that punitive damages are available only on a finding of express or implied malice by clear and convincing evidence. 494 A.2d at 1361–63. In so holding, we rejected the law of other jurisdictions that permit an award of punitive damages based on a lesser state of mind requirement, namely on a finding of gross negligence or recklessness. *Id.* at 1361–62. We concluded that a gross negligence or reckless requirement "covers too broad and too vague an area of behavior, resulting in an unfair and inefficient use of the *doctrine of punitive damages*" that would "allow virtually limitless imposition of punitive damages," "overextends the availability of punitive damages, and dulls the potentially keen edge of the doctrine as an effective deterrent of truly reprehensible conduct." *Id.* at 1361 (quotation marks omitted). To further serve this goal of "avoiding an overbroad application of the doctrine of punitive damages," we held that punitive damages must be proved by a clear and convincing standard of proof.[6] *Id.* at 1362–63. Since 1985, the courts of Maine have consistently applied the clear and

---

5. Because Relco does not dispute that it has sufficient funds to satisfy the judgment, we need not determine any allocation of liability among the defendants on the damages awarded. We also reject Denny's' contention that, as a matter of fact, insufficient evidence exists in the record to support the jury's verdict as to the theory of an integrated enterprise on which the court instructed.

6. In order to persuade a fact-finder by a clear and convincing standard of proof, the party with the burden must convince the fact-finder that the truth of the asserted factual contentions is "highly probable." *Taylor v. Comm'r of Mental Health & Mental Retardation,* 481 A.2d 139, 152 (Me.1984).

convincing standard of proof to all punitive damages claims in line with *Tuttle.*

[¶ 14] In this case, however, Batchelder sought punitive damages pursuant to a particular statutory provision, 5 M.R.S. § 4613, rather than common law. Located within the MHRA, and applicable to WPA claims, section 4613 provides, in pertinent part: "A complaining party may recover punitive damages under this subparagraph against a respondent if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the rights of an aggrieved individual protected by this Act." 5 M.R.S. § 4613(2)(B)(8)(c); *see also* 26 M.R.S. § 834–A (2006) (permitting the filing of a private civil whistleblowers' discrimination claim pursuant to the MHRA). Section 4613, then, permits an award of punitive damages on proof of conduct found to be less than malicious, i.e., if a defendant acted with reckless indifference. Section 4613, however, does *not* speak to the standard of proof that is to be applied in determining whether a defendant acted with malice or with reckless indifference so as to be held responsible for punitive damages.

[¶ 15] Batchelder contends that punitive damages awarded in statutory employment discrimination litigation pursuant to section 4613 should be subject to a preponderance of the evidence standard of proof. In support of her contention, she argues that: (1) the standard of proof for punitive damages in corresponding federal legislation, the federal Civil Rights Act of 1991, 42 U.S.C.S. §§ 1981–2000h–6 (LexisNexis 2000), is a mere preponderance of the evidence; (2) the Maine Legislature copied the exact language of the Civil Rights Act in adopting section 4613 in 1997 by allowing proof of punitive damages on a finding of malice or reckless indifference; and (3) the Maine Legislature's adoption of the

same language in the MHRA as in the Civil Rights Act, and its failure to modify section 4613 to reflect our prior holding in *Tuttle,* indicates a legislative intent that punitive damages in the MHRA be subject to the same standard of proof as in the Civil Rights Act. Finally, Batchelder argues that the intent element in employment discrimination cases already makes such cases more difficult to prove than common law tort cases, and that the Legislature could not possibly have intended to create a further hurdle to plaintiffs by also requiring them to prove an entitlement to punitive damages by clear and convincing evidence.

[¶ 16] Batchelder is correct that the standard of proof for obtaining punitive damages in federal employment cases, as well as federal civil cases in general, is preponderance of the evidence. *See, e.g., Karnes v. SCI Colo. Funeral Servs., Inc.,* 162 F.3d 1077, 1081–82 (10th Cir.1998). It is also true that the language of section 4613 mirrors that of the federal Civil Rights Act, which allows the imposition of punitive damages on proof of reckless indifference, a lower standard than malice: "A complaining party may recover punitive damages under this section against a respondent ... if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C.S. § 1981a(b)(1). The issue for our determination, therefore, is whether the Maine Legislature's adoption of the "reckless indifference" language in section 4613 indicates a legislative intent that punitive damages sought in the context of a state statutory employment discrimination claim should be subject to a preponderance of the evidence standard of proof, consistent with the corresponding federal Civil Rights Act, and not to the clear and con-

vincing standard of proof generally applicable in Maine.

[¶ 17] "When reviewing the construction of a statute, we look first to the plain meaning of the statutory language as a means of effecting the legislative intent." *Home Builders Ass'n of Me., Inc. v. Town of Eliot,* 2000 ME 82, ¶ 4, 750 A.2d 566, 569 (quotation marks & alteration omitted). "Only if the language of a statute is ambiguous will we look beyond it to the legislative history or other external indicia of legislative intent." *Irving Pulp & Paper, Ltd. v. State Tax Assessor,* 2005 ME 96, ¶ 8, 879 A.2d 15, 18. "Ambiguous language is described as language that is reasonably susceptible of different interpretations." *Competitive Energy Servs., LLC v. Pub. Utils. Comm'n,* 2003 ME 12, ¶ 15, 818 A.2d 1039, 1046 (quotation marks omitted). Further, "[t]he meaning of a statute must be construed in light of the subject matter, purpose of the statute, and the consequences of a particular interpretation." *Home Builders Ass'n of Me.,* 2000 ME 82, ¶ 14, 750 A.2d at 571 (quotation marks omitted).

[¶ 18] In this case, nothing in the plain language of section 4613 indicates what standard of proof is required in employment discrimination cases brought pursuant to the MHRA, or that in adopting section 4613 the Legislature intended to follow or to contradict either *Tuttle* or the Civil Rights Act on this point. When the controlling statute does not define the applicable standard of proof, it is traditionally a matter for the judiciary to resolve. *See Taylor v. Comm'r of Mental Health & Mental Retardation,* 481 A.2d 139, 144 (Me.1984). The standard of proof applied should "allocate the risk of error and ... instruct the factfinder as to the degree of confidence society expects for a particular decision." *Id.* at 154. Further, "[t]he answer to what 'our society thinks' is not determined by a public opinion poll, but rather can come only from a reasoned balancing of all the interests, public and private, that are implicated in the particular factual determination." *Id.* at 150.

[¶ 19] The legislative history of section 4613 indicates that subsection (2)(B)(8) was adopted in 1997 in order to "make[ ] the remedies available in proven cases of unlawful discrimination under the Maine Human Rights Act the same as those now available under the Federal Civil Rights Act of 1991, the Americans with Disabilities Act of 1990 and the Federal Fair Housing Amendments Act of 1988." L.D. 1713, Summary (118th Legis. 1997). More specifically, the amendment was intended to "revise[ ] the new compensatory and punitive damages provisions to apply to only intentional employment discrimination, but [not to apply to] employers with fewer than 15 employees. This is consistent with the federal law." Comm. Amend. A to L.D. 1713, No. H–592 (118th Legis. 1997).

[¶ 20] We have often looked to federal counterparts in interpreting state statutes, *see, e.g., Blethen Me. Newspapers, Inc. v. State,* 2005 ME 56, ¶ 13, 871 A.2d 523, 528–29 (holding that an analysis of Maine's Freedom of Access Act is guided by interpretations of the federal Freedom of Information Act), and indeed, in the adoption of section 4613, the Legislature specifically mentioned that it intended for the MHRA to comport with the remedial provisions of corresponding federal statutory provisions, including the Civil Rights Act. Nevertheless, there is nothing in the legislative history leading to the adoption of section 4613 that indicates that the Legislature, in creating a punitive damages remedy for intentional discrimination, intended to change the standard of proof for punitive damages that, pursuant to *Tuttle,* had been applicable to Maine cases for the previous twelve years, and to supersede that stan-

dard with the standard of proof used by the federal courts.

[¶ 21] Although both the plain language and the legislative history of the MHRA are silent as to the applicable standard of proof, the circumstances of the adoption of the preponderance standard to federal statutory civil rights claims are instructive. Indeed, like the MHRA, the federal Civil Rights Act also contains no mention of the applicable standard of proof. Nevertheless, federal courts have looked to and adopted the federal common law standard of proof in interpreting federal statutes that are otherwise silent as to the applicable standard of proof. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 253, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (*superseded on unrelated grounds by* 42 U.S.C.S. § 2000e–2(m) (LexisNexis 1999)). In *Price Waterhouse,* the Court noted that "[c]onventional rules of civil litigation generally apply" in statutory discrimination cases, and that "one of these rules is that parties to civil litigation need only prove their case by a preponderance of the evidence." *Id.* Because the federal common law standard of proof is a preponderance of the evidence, and in the absence of express statutory language providing otherwise, federal courts have applied the federal common law preponderance standard to federal statutory punitive damages provisions as well, including punitive damages claims under the Civil Rights Act. *See id.; Karnes,* 162 F.3d at 1081–82.

[¶ 22] In Maine, however, the common law requires proof of punitive damages claims by the more rigorous clear and convincing standard. *Tuttle,* 494 A.2d at 1362–63. Thus, in the absence of clear statutory language establishing a different standard of proof, language which is not present in the MHRA, Maine courts should apply the common law standard of proof—clear and convincing evidence—to statutory punitive damages claims.

 [¶ 23] Further, we have long embraced the well-established rule of statutory construction that "the common law is not to be changed by doubtful implication, be overturned except by clear and unambiguous language, and that a statute in derogation of it will not effect a change thereof beyond that clearly indicated either by express terms or by necessary implication." *Valente v. Bd. of Envtl. Prot.,* 461 A.2d 716, 718 (Me.1983) (quotation marks omitted); *see also Maietta Constr., Inc. v. Wainwright,* 2004 ME 53, ¶ 10, 847 A.2d 1169, 1174 ("Generally, Legislatures are deemed to draft legislation against the backdrop of the common law, and do not displace it without directly addressing the issue."); *Ziegler v. Amer. Maize–Prods. Co.,* 658 A.2d 219, 223 (Me. 1995) (holding that a "legislative pronouncement ... alters common law only to the extent that the Legislature has made that purpose clear"). Further, statutes that are in derogation of a common law principle must be strictly construed. *Beaulieu v. The Aube Corp.,* 2002 ME 79, ¶ 19, 796 A.2d 683, 689. In enacting section 4613, although the Legislature did deviate from the common law rule by explicitly authorizing an award of punitive damages on a finding of either malice or reckless indifference, there is no such clear and unambiguous language in section 4613 to indicate a legislative intent to change the corresponding common law clear and convincing standard of proof applicable to punitive damages claims.

[¶ 24] The rationale supporting the adoption of the clear and convincing standard in *Tuttle* in 1985—avoiding an overbroad application of an extreme remedy for egregious cases—is equally applicable to employment discrimination cases. Indeed, we have applied the clear and convincing standard to every punitive damages matter that has come before us since our decision in *Tuttle* in 1985, including employment-related cases. *See, e.g., Ballard v. Wag-*

*ner*, 2005 ME 86, ¶ 19, 877 A.2d 1083, 1089 (upholding an award of punitive damages by clear and convincing evidence in a work-related defamation claim against a union president); *Gayer v. Bath Iron Works Corp.*, 687 A.2d 617, 622 (Me.1996) (applying the clear and convincing standard to apprentices' requests for punitive damages based on claims against their former employers).

[¶ 25] Adoption of a higher standard of proof is necessary "to meet the degree of confidence our society thinks [the factfinder] should have in the correctness of factual conclusions involved in those adjudications." *Petit v. Key Bank of Me.*, 688 A.2d 427, 432 (Me.1996) (quotation marks omitted) (alteration in original). Contrary to Batchelder's contention, the increased availability of punitive damages with proof of reckless indifference, a lesser requirement than malice, provides even more reason to otherwise limit punitive damages awards to those that have been proved by the higher standard of clear and convincing evidence.

The entry is:

Judgment affirmed.