STATE OF MAINE

YORK, ss.

*G7 A.E-YoR - 3/18/20,,*

NICHOLAS MASI, III and
DONNA MASI,
           Plaintiffs

    v.

KEELEY CRANE SERVICE and
KEELEY CONSTRUCTION COMPANY,
INC.,
           Defendants

**ORDER**

KEELEY CRANE SERVICE,

    Defendant/Third-Party Plaintiff

    v.

MASI BUILDERS, INC.,

    Third-Party Defendant

Plaintiffs Nicholas Masi III and Donna Masi brought this action against Keeley Crane Service and Keeley Construction Company after Mr. Masi suffered catastrophic injuries in a construction accident allegedly caused by a Keeley Crane Service employee's negligence. Keeley Crane filed a third-party action against Mr. Masi's company, Masi Builders, Inc., seeking indemnity due to Mr. Masi's own negligence in the event that it is found liable to the Masis personally.

Third-party defendant Masi Builders, Inc. has moved for summary judgment against Keeley Crane on the basis of a written release. This motion remains pending, but may be moot. The Masis, Keeley Crane, and Masi Builders, Inc., have jointly filed a motion to dismiss their claims among and against each other pursuant to a *Pierringer*

release. The Masis move for partial summary judgment declaring that Keeley Crane Service and Keeley Construction Company are a single functional enterprise in equity, and that Keeley Construction may be liable for Keeley Crane's employee. Keeley Construction cross-moves for summary judgment on this same issue.

Keeley Construction has filed a second motion for summary judgment on the grounds that any potential liability it has in this action is wholly derivative of Keeley Crane's liability. The release of Keeley Crane should therefore operate as a release of Keeley Construction by operation of law. Keeley Construction has moved to amend its complaint to assert a cross-claim against Keeley Crane for contribution. The parties request that the court stay action on Keeley Construction's second motion for summary judgment and motion to assert a cross-claim until the other pending motions have been resolved.

## BACKGROUND

In the summer of 2007, Masi Builders, Inc., contracted to frame and roof a building on the property of Pit Stop Fuels along Route 25 in Standish, Maine. (Masi Builders Supp. S.M.F. ¶ 1.) The building was to be constructed using pre-assembled attic trusses in the roof. (Masi Builders Supp. S.M.F. ¶ 2.) Masi Builders retained the services of Keeley Crane, who provided a crane and crane operator Dale Blackstone to lift the trusses onto the framed walls. (Masi Builders Supp. S.M.F. ¶¶ 3–5.) Once a truss was raised into position, Nick Masi and his assistant would secure it in place. (Keeley Crane Opp. S.M.F. ¶ 5.) During the process of raising and setting the trusses, the trusses collapsed and Mr. Masi was injured. (Masi Builders Supp. S.M.F. ¶ 6.) Mr. Masi claims that Mr. Blackstone negligently operated the crane, causing the collapse.

2

## DISCUSSION

1.  Nicholas Masi III and Donna Masi's Motion for Partial Summary Judgment Against Keeley Construction Company; Keeley Construction Company's Cross-Motion for Summary Judgment

The Masis move for summary judgment declaring that Keeley Construction and Keeley Crane were operated as though they were a single enterprise without material regard to their separate corporate existences. They should thus be liable in equity as a unitary business and the sole employer of Dale Blackstone.

Keeley Construction Company and Keeley Crane Service are listed as separate corporations with Maine's Secretary of State. (Def.'s Add'l S.M.F. ¶¶ 1–2.) Both are wholly owned by James F. Keeley, Jr. (Pl.'s Supp. S.M.F. ¶ 1.) Mr. Keeley is the president of both companies, but during his deposition he could only recall being paid by Keeley Construction. (Pl.'s Supp. S.M.F. ¶¶ 1, 4.) The companies are housed at the same location and share the same mailing address. (Pl.'s Supp. S.M.F. ¶ 2.) Keeley Construction pays 75% of the rent, and Keeley Crane the remaining 25%. (Pl.'s Supp. S.M.F. ¶ 3.) Mr. Keeley has the authority to alter the amount of rent and compensation each company pays, how and when he sees fit. (Pl.'s Supp. S.M.F. ¶ 27.)

Keeley Construction once filed a statement of intention to do business under the name Keeley Crane Service, prior to Keeley Crane's incorporation as a separate entity. (Pl.'s Supp. S.M.F. ¶ 5; Keeley Dep. Exs. 31–32.) Keeley Construction and Keeley Crane share a single Federal Employer Identification Number, and Mr. Keeley testified that Keeley Construction and Keeley Crane file a single tax return.[1] (Pl.'s Supp. S.M.F. ¶¶ 6–7; Pl.'s Ex. B.) Mr. Keeley has given Keeley Construction standing authority to guaranty

---

[1]  Following his deposition, Mr. Keeley filed an affidavit stating that Keeley Construction and Keeley Crane file separate tax returns. Parties cannot create or avoid issues of fact to defeat summary judgment by submitting affidavits disputing their own prior deposition testimony. *See Zip Lube, Inc. v. Coastal Sav. Bank*, 1998 ME 81, ¶10, 709 A.2d 638, 641–42.

loans taken by Keeley Crane, and Keeley Construction has acted as Keeley Crane's guarantor. (Pl.'s Supp. S.M.F. ¶ 8; Keeley Dep. Ex. 30.) Keeley Crane has likewise acted as guarantor for Keeley Construction. (Pl.'s Supp. S.M.F. ¶ 9.)

Keeley Construction and Keeley Crane are covered by a single workers' compensation insurance policy.[2] (Pl.'s Supp. S.M.F. ¶ 6; Keeley Dep. Ex. 27; Pl.'s Ex. B.) Keeley Crane currently has an annual sales volume of approximately $6 million with forty employees, and carries a general liability insurance policy with $1 million of coverage. (Pl.'s Supp. S.M.F. ¶¶ 21, 24.) In comparison, Keeley Construction currently has an annual sales volume of $2 million with six employees, and carries a general liability insurance policy with $2 million of coverage. (Pl.'s Supp. S.M.F. ¶¶ 22, 25.) Keeley Construction also carries a $3 million umbrella insurance policy that expressly includes Keeley Crane's underlying Employers' Liability coverage. (Pl.'s Supp. S.M.F. ¶¶ 25–26; Keeley Dep. Ex. 26.)

Keeley Crane has no separate employee handbook, policies, or forms.[3] (Pl.'s Supp. S.M.F. ¶ 11.) Instead, it uses Keeley Construction's forms and human resources materials. (Pl.'s Supp. S.M.F. ¶ 10.) One person employed by Keeley Construction administered payroll operations for both companies. (Pl.'s Supp. S.M.F. ¶ 15.) Employees of Keeley Construction could be promoted, demoted, or otherwise moved to

---

[2]    Keeley Construction objects arguing that all evidence concerning the defendants' insurance coverage is irrelevant, materially prejudicial, and inadmissible. The evidence is relevant to show that Mr. Keeley effectively treated the companies as a single corporation. It is also relevant to the allegation that Mr. Keeley purposefully shifted assets from the entity with more exposure to liability, Keeley Crane, to the entity with reduced exposure, Keeley Construction. Finally, Mr. Keeley's affidavit states that the companies are covered by different insurance policies. The affidavit does not specify whether it is referring to the workers' compensation policy, which is alleged to provide joint coverage, or the general liability policies that are admittedly separate.

[3]    Keeley Construction objects to the admissibility of employment materials on grounds of relevance and prejudice. The same considerations that apply to the insurance materials apply to the employment materials, and the objections should be overruled.

Keeley Crane, and vice-versa. (Pl.'s Supp. S.M.F. ¶ 13.) Mr. Keeley would decide whether such a move could be made. (Pl.'s Supp. S.M.F. ¶¶ 13–14.) If an employee did move between companies, his or her paycheck would reflect the difference. (Pl.'s Supp. S.M.F. ¶¶ 13–14.)

Dale Blackstone, the crane operator, applied for his position on forms bearing Keeley Construction's name at the top. (Pl.'s Supp. S.M.F. ¶ 12.) He was officially employed by Keeley Crane. (Def.'s Add'l S.M.F. ¶¶ 9–10.) Mr. Blackstone reported to Ben Keeley, Mr. Keeley's son. (Pl.'s Supp. S.M.F. ¶ 20.) Ben Keeley is employed by both Keeley Construction and Keeley Crane, but is only paid by Keeley Construction. (Pl.'s Supp. S.M.F. ¶ 19.) Mr. Blackstone did not know Ben Keeley's official title, instead referring to his position as "owner's son." (Pl.'s Supp. S.M.F. ¶ 20.)

Mr. Keeley states that Keeley Crane and Keeley Construction were individually solvent and adequately capitalized at the time of the incident. (Def.'s Add'l S.M.F. ¶¶ 16, 19.) The plaintiffs oppose this characterization of Keeley Crane's finances with evidence that multiple U.C.C. filings and I.R.S. liens were in place against that company. (Pl.'s Resp. S.M.F. ¶ 16.) Mr. Keeley states that Keeley Crane and Keeley Construction maintained separate corporate records and that each business's corporate officers fulfilled their functions. (Def.'s Add'l S.M.F. ¶¶ 18, 21.) The companies provided separate and distinct services to their customers. (Def.'s Add'l S.M.F. ¶ 23.)

In their amended complaint, the Masis assert that Keeley Construction should be liable for Mr. Blackstone's negligence because they "are interrelated companies with interrelated operations, common management, centralized control of labor operations and common ownership," and should thus be treated as a single employer. (Pl.'s Compl. ¶ 16.) The Masis also contend that Keeley Crane and Keeley Construction's separate corporate personalities have "merged so that one corporation is a mere adjunct

5

of the other or the two companies form a single enterprise." (Pl.'s Compl. ¶ 17.) These broad statements ultimately distill into similar but distinct legal theories.

The plaintiffs first advance the "single employer" or "integrated employer" doctrine. This theory was developed under the National Labor Relations Act "to determine if 'interrelated companies should be treated as one entity'" subject to the Act's provisions. *Batchelder v. Realty Res. Hospitality, LLC*, 2007 ME 17, ¶ 7, 914 A.2d 1116, 1120 (quoting *Romano v. U-Haul Int'l*, 233 F.3d 655, 662 (1st Cir. 2000)). The theory has since been applied to employers subject to liability under Title VII of the Civil Rights Act of 1964. *Torres-Negron v. Merck & Co.*, 488 F.3d 34, 39–41 (1st Cir. 2007). It stems from the United States Supreme Court's 1965 ruling that "several nominally separate business entities" might be considered a single employer subject to the National Labor Relations Act "where they comprise an integrated enterprise . . . ." *Radio Union v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256 (1965). "The controlling criteria . . . are interrelation of operations, common management, centralized control of labor relations and common ownership." *Id.*

This test was recited by the First Circuit in *Romano v. U-Haul International*, 233 F.3d 655, 662 (1st Cir. 2000), a case brought under Title VII of the Civil Rights Act of 1964. Maine's Superior Court then drew on *Romano* to instruct a jury on the "integrated enterprise" theory in a case brought by an employee under the Maine Human Rights Act and Maine Whistleblower's Protection Act. *Batchelder*, 2007 ME 17, ¶¶ 1, 6–7, 914 A.2d at 1118–20. The jury found for the plaintiff and determined that eighteen separate business entities were jointly liable because they constituted a single integrated enterprise. *Id.* ¶ 5, 914 A.2d at 1119. The Law Court found no obvious error with the integrated enterprise instruction on appeal, but declined to formally adopt the theory or its formulation in Maine. *Id.* ¶ 11, 914 A.2d at 1121.

6

The plaintiffs are asking this court to apply the integrated enterprise test to determine whether Keeley Construction and Keeley Crane are a single employer, subjecting Keeley Construction to liability for Mr. Blackstone's actions under the doctrine of respondeat superior. This argument would have greater weight if this were a case brought by Mr. Blackstone against his employers. The theory has been widely adopted and applied in cases brought under the National Labor Relations Act, the Civil Rights Act of 1964, and their state-law analogs. However, the court could not locate any cases where it has been applied outside this statutory context. More to the point, no reported cases are found in which the test has been applied to hold a nominally independent entity liable for a common law tort claim under the doctrine of respondeat superior. The court declines to apply the doctrine in the absence of supporting precedents.

The plaintiffs' second argument advances the "alter ego" doctrine as articulated by the courts of California. While both parties treat the "alter ego" doctrine as a separate and somewhat novel basis for imposing liability on a corporation, the cited line of cases makes it clear that the doctrine is essentially an application of classic veil-piercing principles to sister corporations rather than shareholders. As a California Court of Appeal put it:

> Usually, a disregard of the corporate entity is sought in order to fasten liability upon individual stockholders. . . . However, only a difference in wording is used in stating the same concept where the entity sought to be held liable is another corporation instead of an individual. . . .
>
> . . . .
>
> Generally, alter ego liability is reserved for the parent-subsidiary relationship. However, under the single-enterprise rule, liability can be found between sister companies. . . . "In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it."

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs*, 1 Cal. Rptr. 2d 301, 317–18 (Cal. Ct. App. 1991) (quoting 2 Marsh's Cal. Corp. Law (3d ed. 1990) §16.23, p. 1416). To pierce the veil and reach either a shareholder or a sister corporation requires "unity of interest and ownership" leading so some inequitable result. *Id.* at 317.

Applying the principles of veil piercing to sister corporations is not unique to California, nor is it a particularly recent development. New York's Court of Appeals discussed the issue in a case involving a taxicab fleet comprised of multiple minimally-capitalized corporations, each of which owned only two vehicles. *Walkovszky v. Carlton*, 18 N.Y. 2d 414 (N.Y. 1966). Maine's Law Court has yet to address shared liability between sister corporations where the corporate form has been abused, but the potential for such liability is consistent with existing Maine law.

In Maine, courts "will disregard the corporate entity" if a plaintiff establishes: "(1) some manner of dominating, abusing, or misusing the corporate form; and (2) an unjust or inequitable result that would arise if the court recognized the separate corporate existence." *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶5, 720 A.2d 568, 571. Nothing in Maine's articulation of the law restricts its application to suits against a shareholder or parent corporation. The consequences of a decision to "disregard the corporate entity" are broad and could lead the court to find that two supposedly independent corporations are in fact a single enterprise subject to liability. The plaintiffs' attempt to reach Keeley Construction is thus cognizable under established Maine law.

As noted above, "before a court may pierce the corporate veil, a plaintiff must establish that: (1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate

8

corporate existence." *Id.* ¶6, 720 A.2d at 571. The doctrine balances "the policy of encouraging business development with the policy of protecting those who deal with the corporation," and its application depends on the totality of the circumstances. *Id.* ¶6 n.2, 720 A.2d at 572 n.2.

Courts consider a number of factors when determining whether the corporate form has been abused, including:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity[,] assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; [and] (12) use of the corporation in promoting fraud.

*Id.* ¶7, 720 A.2d 571 (quoting *The George Hyman Constr. Co. v. Gateman*, 16 F. Supp. 2d 129, 149–50 (D. Mass. 1998)).

The first three factors are indisputably present in this case. Mr. Keeley is the sole owner and president of both Keeley Crane and Keeley Construction. Ownership and control are united in him. He has ultimate decision-making authority in both corporations, and evidently intermingles business activity and management between the two. Both companies employ Mr. Keeley and his son, Ben Keeley, but Ben Keeley is only paid by Keeley Construction. Ben Keeley nonetheless exercised direct managerial control over Keeley Creane employee Dale Blackstone. The companies use a single set of employment forms with Keeley Construction's name. A single Keeley Construction employee regularly performed payroll functions for both companies in the past. In addition to confused managerial and employment obligations, the companies are to a degree financially intermingled. They file a single tax return, share a federal employer

9

identification number, and are covered by a single workers' compensation policy. They guaranty each other's loans.

While the practices recited above blur the line between the entities' business practices, the plaintiffs have not come forward with evidence showing a gross disregard for the corporate form per se. There is no evidence that Mr. Keeley did not observe the requisite legal formalities or that he kept inadequate corporate records. There is no allegation that he used either corporation for his personal business, and there is no direct financial information indicating that either corporation was insolvent at the time of Mr. Masi's injury. The plaintiffs do refer to a number of UCC filings against Keeley Crane to argue that it was highly leveraged, but this in itself does not show that it was thinly capitalized.

All of the facts and circumstances, taken together, generate a question of material fact as to whether Keeley Crane and Keeley Construction have abused their corporate status. If there was abuse, plaintiffs must also show that this abuse would result in "injustice or inequitable consequences" unless the court disregards the defendants' separate corporate existences. *Id.* ¶8, 720 A.2d at 572. Fraud or illegality will support a determination to pierce the corporate veil, but are not required. *Id.*

The plaintiffs have not alleged that the defendants engaged in illegality. The primary objection to Keeley Construction and Keeley Crane's separateness appears instead to be rooted in the disparate size of their capitalization and liability insurance policies. Keeley Construction's liability insurance allegedly provides approximately five times more coverage than Keeley Crane's. The plaintiffs argue that this disparity evinces an intent to defund Keeley Crane at the expense of Keeley Crane's clients. Keeley Crane's business volume is larger than Keeley Construction's, and its exposure to liability is correspondingly increased. These disparities, coupled with the pervasive

10

intermingling of business and personnel between the companies, are sufficient to generate a question of material fact as to whether recognition of the corporate form would work an injustice in this case.

Material facts about Keeley Construction's relationship to Keeley Crane and its employees remain in dispute. The Masis' and Keeley Construction's motions are denied.

2.  Nicholas Masi III, Donna Masi, Masi Builders, Inc., and Keeley Crane Service's Release and Joint Motion to Dismiss; Keeley Construction Company's Second Motion for Summary Judgment; and Masi Builders, Inc.'s Motion for Summary Judgment

Mr. and Mrs. Masi, Masi Builders, Inc., and Keeley Crane Service have agreed to settle the claims among and against each other. They acknowledge that claims against Keeley Construction remain outstanding. (Joint M. ¶2.) To this end, they have signed a release whereby the plaintiffs agree to hold Keeley Construction harmless for any portion of the plaintiffs' damages attributable to Keeley Crane or Masi Builders. (Joint M. ¶¶3–4.) Keeley Crane agrees to release Masi Builders from any claim for contribution. (Joint M. ¶5.) By its terms, the release does not preclude the Masis from pursuing Keeley Construction and obtaining recovery out of its assets in the event that it and Keeley Crane are determined to be a unitary entity. (Joint M. ¶2.)

Pursuant to their settlement and release contract, the Masis, Keeley Crane, and Masi Builders jointly move to dismiss the Masis' claims against Keeley Crane and Keeley Crane's claims against Masi Builders, with prejudice and without costs. The parties' proposed order would also declare that the release does not impact the Masis' ability to pursue Keeley Construction. A copy of the release was not provided to this court for review. There is no reason to deny the moving parties' request for dismissal among and between themselves, and the court grants the motion for dismissal to this

11

extent. The court will refrain, however, from providing an advisory opinion on the future force and effect of the release's terms against parties who are not signatories to the contract.

The reasons for this are Keeley Construction's pending motions for summary judgment pursuant to the release, and to add a cross-claim against Keeley Crane for contribution or indemnity. Both directly challenge the release's claim to be a *Pierringer* release authorized by 14 M.R.S.A. §156 (2009).

## CONCLUSION

The court finds that there are unresolved issues of material fact as to whether Keeley Construction and Keeley Crane are a single corporate enterprise. As such, both the plaintiffs' partial motion for summary judgment and Keeley Construction's cross-motion for summary judgment are denied.

Plaintiffs Nick and Donna Masi, Keeley Crane, and Masi Builders jointly request that the court dismiss the claims among and between them. The court Grants this motion. The Masis' claims against Keeley Crane are dismissed with prejudice and without costs. Keeley Crane's claims against Masi Builders are likewise dismissed with prejudice and without costs. Masi Builders' motion for summary judgment is moot. Nothing in this order should be construed as a decision with respect to Keeley Constructions pending Motion for Summary Judgment and to add a cross-claim against Keeley Crane, which will be briefed and argued in the ordinary course.

Dated: March 18, 2011

G. Arthur Brennan
Justice, Superior Court

12

ATTORNEYS FOR PLAINTIFF:
SUSAN B DRISCOLL
BERGEN & PARKINSON
62 PORTLAND RD
KENNEBUNK ME   04043

R TERRANCE DUDDY
KELLY REMMEL & ZIMMERMAN
PO BOX 597
PORTLAND ME   04112-0597

ATTORNEYS FOR DEFENDANT KEELEY CRANE SERVICE:
HAROLD FRIEDMAN
MARTHA GAYTHWAITE
BLAIR A JONES
FRIEDMAN GAYTHWAITE WOLF & LEAVITT
PO BOX 4726
PORTLAND ME   04112-4726

ATTORNEY FOR DEFENDANT KEELEY CONSTRUCTION COMPANY INC:
THOMAS MARJERISON
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME   04112-4600

ATTORNEY FOR THIRD PARTY DEFENDANT MASI BUILDERS INC:
H PETER DEL BIANCO
LAMBERT COFFIN
PO BOX 15215
PORTLAND ME   04101-5215

STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-08-303
CiAC - YOR - 7/21/2011

NICHOLAS MASI, III and
DONNA MASI,
                Plaintiffs

        v.

KEELEY CRANE SERVICE and
KEELEY CONSTRUCTION COMPANY,
INC.,
                Defendants
_____

KEELEY CRANE SERVICE,

        Defendant/Third-Party Plaintiff

        v.

MASI BUILDERS, INC.,

        Third-Party Defendant

ORDER

The court has before it Defendant Keeley Construction, Co.'s ("Keeley Construction") second motion for summary judgment and motion to amend its answer and file a cross-claim against Keeley Crane Service ("Keeley Crane") for contribution. Following hearing, the motion is Denied.

**BACKGROUND**

The facts of this case were previously set forth in this court's order dated March 18, 2011. In that order, this court denied the plaintiffs' motion for summary judgment and Keeley Construction's cross-motion for summary judgment. This court found that there was an issue of material fact as to whether Keeley Construction and Keeley Crane are a single enterprise and found that Keeley Construction could be liable to the

plaintiff based on an "alter ego" theory. Keeley Construction now moves for summary judgment on the grounds that a corporation cannot be held liable for the independent torts of a sister corporation that has been released from liability.[1]

There is no dispute that Keeley Crane was released from liability. On March 29, 2010, James Keeley, the common owner and president of both Keeley Crane and Keeley Construction, was present at a settlement conference with the plaintiffs. Also present were two different insurance defense attorneys, representing Keeley Crane and Keeley Construction, respectively. The plaintiffs, Keeley Crane, and Masi Builders, Inc. agreed to settle. The release between these parties states:

> [The Releasors] hereby release and discharge forever, Keeley Crane Service, its agents, representatives, parent companies and / or subsidiaries, successors, assigns, present and former directors, stockholders, officers, owners, employees, insurers and attorneys, except and specifically excluding Keeley Construction Company, Inc. ... The parties acknowledge that claims against Keeley Construction Company, Inc. specifically survive this Agreement. Further, the parties acknowledge that the claims against Keeley Construction Company, Inc. include assertion that Keeley Construction Company, Inc. and Keeley Crane Service are an integrated enterprise and / or the single employer of collective employees. The Release and Indemnification Agreement shall not limit Plaintiffs' right to recovery against Keeley Construction Company, Inc. and shall not limit Plaintiffs' rights regarding any assets deemed to be assets of Keeley Construction Company, Inc.

(Def.'s Ex. A, p. 2 & n. 1.) Notwithstanding this, Keeley Construction asserts that the release of Keeley Crane necessarily released Keeley Construction or, alternatively, that the so-called "circle of indemnity" protects it from the plaintiffs' suit. *Hill v. Sullivan,*

---

[1]    Keeley Construction originally moved for summary judgment on the grounds that a principal cannot be held liable for the independent torts of a released agent.   However, this court rejected the plaintiff's assertion that Keeley Construction could be found liable as a single employer.   In its opposition to Keeley Construction's second motion for summary judgment, the plaintiff makes clear that its theory of liability is not based on the principal-agent relationship.

2

2008 Me. Super. LEXIS 108, *6-7 (Me. Super. May 21, 2008) (Warren, J.) (citing *Nelson v. Johnson*, 599 N.W.2d 246,248-49 (N.D. 1999)).[2]

## DISCUSSION

The release clearly states that the plaintiffs have the right to pursue its claims against Keeley Construction.

> Equitable estoppel "precludes a party from asserting rights which might perhaps have otherwise existed . . . against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right." *Dep't of Health & Human Servs. v. Pelletier*, 2009 ME 11, ¶ 17, 964 A.2d 630, 635 (quotation marks omitted). Equitable estoppel requires a misrepresentation that "may arise through a combination of misleading statements, conduct, or silence." *Id.* ¶ 18, 964 A.2d at 636.

*Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 27, 980 A.2d 1270, 1277.

The plaintiffs and Keeley Crane knowingly entered into the release agreement, explicitly reserving to the plaintiffs the right to pursue claims against Keeley Construction. The plaintiffs entered into the release relying on Keeley Crane's written assertions that they could pursue claims against Keeley Construction, independent of Keeley Construction's relationship with Keeley Crane. There is no dispute that the plaintiffs' position is worse if they cannot pursue their claims against Keeley Construction despite the contractual language stating otherwise.

There is a dispute as to whether Keeley Construction is the alter ego of Keeley Crane. If the fact finder determines that Keeley Construction is the alter ego of Keeley Crane, then Keeley Construction explicitly preserved the plaintiffs' right to pursue its

---

[2]     Keeley Construction claims that it should be released from liability because if it is found to be Keeley Crane's alter ego, it will have an action for contribution against Keeley Crane, which would trigger the indemnification provision of the release. (*See* Def.'s Ex. A § VIII.) The indemnification provision of the release states that the plaintiffs will indemnify Keeley Crane for all actions against it, including actions for contribution. (*Id.*) The provision explicitly states that the plaintiffs will indemnify Keeley Crane for claims including those brought by Keeley Construction. (*Id.*) Therefore, the plaintiffs would have no additional recovery. *See Hill*, 2008 Me. Super. LEXIS 108 at *6-7 (quoting *Nelson*, 599 N.W.2d at 248-49).

3

claims against it and is equitably estopped from asserting otherwise. For the same reasons, Keeley Construction is estopped from asserting a claim for contribution against Keeley Crane, thereby defeating the circle of indemnity.

Keeley Construction was not technically a party to the release agreement. For equitable estoppel to apply, the plaintiffs would have to show that Keeley Construction misled them in some way. The plaintiffs can do so by establishing that Keeley Construction was present at the settlement negotiations through its agent, James Keeley.[3] "Whether an agency relationship exists is generally a question of fact." *Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 12, 983 A.2d 382, 387 (quotations omitted). A fact finder could determine that James Keeley, who is the owner and president of Keeley Construction and was present at the settlement conference, was also acting as an agent of Keeley Construction when he explicitly preserved the plaintiffs' right to pursue their claims against Keeley Construction. *See e.g., Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 17, 901 A.2d 189, 196 (finding that a corporation's president is the corporation's agent). Though there are limited facts in the summary judgment record to determine what type of authority James Keeley had, there are at least some facts to indicate that he was also acting on behalf of Keeley Construction when he signed the release agreement. *See Libby v. Concord Gen. Mut. Ins. Co.*, 452 A.2d 979, 981-82 (Me. 1982) (defining express authority, implied authority and apparent authority).

Accordingly, there remains a dispute as to whether Keeley Construction is equitably estopped from claiming that the release of Keeley Crane effectively released Keeley Construction. For the same reasons, Keeley Construction would be equitably estopped from asserting a claim for contribution against Keeley Crane thereby defeating

---

[3] Alternatively, Keeley Construction's attorneys were also present and may have been acting as an agent of Keeley Construction.

4

the circle of indemnity. Moreover, there is a dispute as to whether James Keeley was acting as an agent of Keeley Construction when he entered into the release agreement.

## CONCLUSION

Keeley Construction's motion to amend its answer is DENIED. Keeley Construction's motion for summary judgment is also DENIED because Keeley Construction may be estopped from asserting any claim under the release.

Dated:     July 2/ , 2011

G. Arthur Brennan
Justice, Superior Court

ATTORNEYS FOR PLAINTIFF:
SUSAN B DRISCOLL
BERGEN & PARKINSON
62 PORTLAND RD
KENNEBUNK ME   04043

R TERRANCE DUDDY
KELLY REMMEL & ZIMMERMAN
PO BOX 597
PORTLAND ME   04112-0597

ATTORNEYS FOR DEFENDANT KEELEY CRANE SERVICE:
HAROLD FRIEDMAN
MARTHA GAYTHWAITE
FRIEDMAN GAYTHWAITE WOLF & LEAVITT
PO BOX 4726
PORTLAND ME   04112-4726

ATTORNEY FOR DEFENDANT PIT STOP FUELS INC AND DANA LAMPRON:
JAMES C HUNT
ROBINSON KRIGER & MCCALLUM
PO BOX 568
PORTLAND ME   04112-0568

ATTORNEY FOR DEFENDANT KEELEY CRANE SERVICE:
BLAIR A JONES
GERMANI MARTEMUCCI RIGGLE & HILL
43 DEERING STREET
PORTLAND ME   04101

ATTORNEY FOR KEELEY CONSTRUCTION COMPANY INC:
THOMAS MARJERISON
NORMAN HANSON & DETRCY
PO BOX 4600
PORTLAND ME   04112-4600

ATTORNEY FOR 3RD PARTY DEFENDANT:
H PETER DEL BIANCO
LAMBERT COFFIN
PO BOX 15215
PORTLAND ME   04101-5215

5